1817.

LUPTON
v.
LUPTON.

*S. LUPTON and E. PEARSALL *against* W. LUPTON
and others.

The *real* estate is not charged with the payment of legacies, unless the
intention of the testator to that effect is expressly declared, or
clearly to be inferred from the language and dispositions of the will.

The usual clause devising all the rest of his real and personal estate, not
before devised, is not sufficient to show an intention to charge the
real estate; nor is the mere direction, that all debts and legacies are to
be paid. But if the real estate be devised, " after payment of debts and
legacies," it is charged with the payment of them. Though the real
estate be charged, yet the personal estate is the proper fund for the
payment of debts and legacies, and is to be first applied, before charg-
ing the real estate.

If an executor pays one legatee, and there is, afterwards, a deficiency of
assets to pay the others, the legatee so paid must refund a proportion-
able part. But if the deficiency of assets has been occasioned by the
*waste* of the executor, the legatee who is paid may retain the advan-
tage he has gained by his legal diligence, as against his co-legatees,
but not against a *creditor.*

A legatee may compel an executor to bring into Court money in his
hands, or to give security, where the legacy is payable at a future day.

A legacy, payable at a future day, does not carry *interest* until after it is
payable, unless it is given to a *child,* and the parent, by the will, has
made no other provision for its maintenance. But this exception, it
seems, does not extend to *grandchildren.*

An executor, against whom a bill has been taken, *pro confesso,* in a suit
by legatees, is a competent witness for the other defendants or
devisees.

*It seems,* that a guardian *ad litem,* is a competent witness, he being, at
most, liable only for *costs,* which are not of course, but discretionary,
and according to circumstances.

*September* 30th.    THE plaintiffs, who were the children of *Brandt Schuyler
Lupton,* deceased, and the *grandchildren* of *William Lupton,*
deceased, and *legatees* under the will of the said *William
Lupton,* filed their bill against the defendant *W. Lupton,*
as executor, and against the other defendants, who are
children, and immediate representatives of *Lancaster* and
*Elizabeth Lupton,* deceased, two of the children of the testator,
and devisees under the same will. The testator, *William Lup-
ton,* deceased, being seised and possessed of real and personal
[ *615 ]    estate, on the 20th of *November,* 1794, *made his last will,
which, after directing the payment of debts, and giving to his
wife the use of the personal estate. and the rents and profits of
all the real estate, during her widowhood, in lieu of dower,
contained the following clause: " I give and bequeath unto
each of my three *grandchildren, William, Samuel,* and *Eliza
Lupton,* (the children of my late son, *Brandt Schuyler Lup-*
476

*ton,* deceased,) as soon as they shall respectively attain to the age of twenty-one years, the sum of five hundred pounds, and the further sum of five hundred pounds each, when they shall respectively arrive to the age of 25 years." And the testator, after devising certain lands to his said three grandchildren, &c., which, in case of their death, without lawful issue, should go to his three children, *William, Lancaster,* and *Elizabeth,* declared as follows : " and my will is, that my said grandchildren shall, after my decease, be maintained and educated at the discretion of my executors, out of the interest, rents, and profits of the estate herein before bequeathed and devised to them, until they respectively arrive unto lawful age. *Item,* after the decease or marriage of my said wife, I give, &c. unto my three children, *William, Lancaster,* and *Elizabeth,* but not until my said daughter *Elizabeth* shall arrive at full age, all the rest, residue, and remainder of my real and personal estate, not herein before already devised and bequeathed, their heirs and assigns, forever, equally to be divided," &c. And the testator appointed *John Chase, John Ellis,* and his two sons, *William* and *Lancaster,* executors. The testator's wife, children, and grandchildren, all survived him, and *Elizabeth,* the youngest grandchild, had, some time since, attained the age of 25 years. *Lancaster Lupton,* one of the sons of the testator, married *Francis P. Townsend,* and died, leaving her a widow, *encient* of a daughter, his only child, who is still living, and a minor. *Elizabeth,* the testator's daughter, married *John B. Johnson,* now deceased, by whom she had three children, *Maria, William L.,* and *\*Samuel R.,* who are infants, still living; and she afterwards died intestate. *John Ellis,* one of the executors, declined proving the will, which was proved by the other three executors. *Lancaster Lupton,* one of the executors, afterwards died, and the bill charged, that the three executors, after the death of the widow of the testator, took possession of the personal estate, and either converted the same to their own use, or wasted it, or distributed it among the children of the testator, or their immediate representatives, regardless of the legacies bequeathed to the testator's *grandchildren,* and without providing for their maintenance and education. That the plaintiff *S. L.* was about seven years old, and the plaintiff *E. P.* about five years old, when their grandfather, the testator, died, and were entitled, during their respective minorities, to the rents and profits of real estate devised to them, and to the interest of the respective sums bequeathed to them, to be applied towards their maintenance and education ; and that the same ought to have been raised by the executors, out of the testator's per-

1817.

LUPTON
v.
LUPTON.

[ * 616 ]

1817.

LUPTON
v.
LUPTON.

[ * 617 ]

sonal estate, and that if that was not sufficient, out of his residuary real estate; but that the same has never been raised or applied to the benefit of the plaintiffs; that *W. L.*, one of the grandchildren, had received the five hundred pounds bequeathed to him; that the executors and the representatives of *Lancaster L.* and *Elizabeth L.* had, by means of partition, under the act of the legislature, sold, and converted into money, all the real and personal estate of the testator, and appropriated the same to their own use, without regard to the rights of the plaintiffs, without paying for their maintenance and education, and leaving the whole of the said second or further sum of five hundred pounds, payable to *S. L.*, on his attaining the age of 25 years, and the interest thereon, and part of the sum of five hundred pounds, bequeathed to *E. P.*, to be paid on her coming to the age of 21 years, and the whole of the sum of five hundred pounds bequeathed to her, to be paid to her *on her arriving at 25 years, with the interest thereon, unpaid. That the real estate, bequeathed to the plaintiffs, had yielded no rents or profits during their minority; or, if it had, it had not been applied to their benefit; and that *John Chase*, one of the executors, had died insolvent and intestate, and no person had administered on his estate. The bill prayed, that *W. Lupton*, the surviving executor, might either admit assets sufficient to satisfy the claims of the plaintiffs, or give a true account thereof, &c.; and that the administrators of *Lancaster Lupton* might admit assets, &c., or account for the same, &c.; and that the defendants, or such of them to whom it belongs, might come to an account with the plaintiffs for their legacies, and that what should be found to be due to them, on such accounting, might be paid out of the personal estate of the testator; and if that was not sufficient, out of his real estate.

The defendant, *W. Lupton*, the only surviving *executor* of the testator, suffered the bill to be taken *pro confesso* against him.

The defendant *Maria L.*, (an infant daughter of *Elizabeth*, one of the children of the testator,) having, since the filing the bill, married *Evan M. Johnson*, they put in their joint and several answer; and the defendant *F. P. Lupton*, the widow of *Lancaster Lupton*, deceased, and her infant daughter, by her guardian, *C. Wright*, also put in their separate answers; but as the bill was dismissed as to all the defendants, except *W. L.*, the executor, who was ordered to pay the balance due to the plaintiffs, it is unnecessary to state the answers further. Replications were filed to the answers, and proofs taken in the cause.

It appeared by the testimony of *Peter Roosevelt*, who was

478

examined as a witness for the defendants, that he had, in 1808, as the next friend and *guardian ad litem* of the children of *Elizabeth Johnson*, instituted a suit in this Court, in their behalf, against the executors and others, for an account and settlement of the estate, and by an order of the *Court, the accounts were referred to a master, and that the plaintiffs had notice of the suit; that *William Lupton*, the executor, rendered his account, which was discussed before the master, and the three children of *Elizabeth* (defendants) were charged with their proportions of the legacies of the plaintiffs, and of the expenses of the executors in maintaining and educating the plaintiffs, and the same was deducted from their proportions of the testator's estate; but the executors were not required to account for the time previous to the death of the widow of the testator; and the legacies coming to the plaintiffs were retained, by *William Lupton*, out of the proceeds of the sale of the real estate, which was known to the plaintiffs, who were informed, at the time. of the taking of the account, and of the amount of their legacies being · so retained by the executor, to whom they were to look for payment.

*William Lupton*, the executor, one of the defendants, was also examined as a witness for the other defendants. He stated that the testator, at the time of his death, owed little or nothing; that the personal estate was sufficient to pay all the debts and legacies, which amounted to 7,500 dollars. That he and his brother *Lancaster* were the sole acting executors, and the whole personal estate came into their hands, each one receiving a part, and without accounting to each other, and on the death of *L.*, the assets in his hands unadministered, were delivered over to the witness. That the plaintiffs were maintained out of the estate, by the executors, until they came of age, except during the short time the plaintiff *E.* was married; that the expenses of their maintenance was equal to the interest of the legacies; that the real estate was sold under the partition, and one third of the proceeds was received by the witness, as heir. That in the account rendered before the master, in the suit brought in behalf of the infant children of *Elizabeth Johnson*, the witness kept back the legacy payable to *S. L.* at the age of 25, and the two sums payable *to *E. L.* That *S. L.*, after he arrived at the age of 25, knew of the fact, and accepted *the bond* of the witness for the legacy payable in three years. That in his account he charged the representatives of *Lancaster L.* and *Elizabeth Johnson*, who are the other defendants, with their proportion of the said legacies, and for the maintenance and education of the plaintiffs, the amount of

[ * 619 ]

1817.

LUPTON
v.
LUPTON.

which, with their assent, he retained in his hands. That the plaintiffs were not 25 years of age, when the accounts were taken in the chancery suit, nor were their rights or interests implicated in that suit; but they knew, after they arrived at 25 years of age, of the settlement with the other defendants; and he paid *Elizabeth P.* the first 500 pounds, excepting a very small part, and gave his bond to *S. L.*, which he accepted, for the legacies due him, as above stated. That the witness was, in *July*, 1811, and since has been, unable to pay all the legacies.

*Riggs*, for the plaintiffs, contended, 1. That the legacies to the grandchildren were given out of the estate of the testator; and the defendants were only entitled to the residue of the estate, after those legacies were paid; that no direction being given to pay the legacies out of the personal estate, they were a charge on the land. The devise of the real estate was subject to this charge, and the devisees are bound to see the legacies paid. The plaintiffs were not, therefore, obliged to look exclusively to the executors. They might take what he could give, and exhaust the remedy against him, before calling on the devisees. (*Brudenell* v. *Boughton*, 2 *Atk.* 268. *Joy* v. *Campbell*, 1 *Sch. & Lef.* 328. 344.)

2. That residuary legatees, leaving a legacy in the hands of an executor or trustee, who fails to pay, are themselves answerable to creditors. (*Carsey* v. *Bashan*, decided by Lord *Hardwicke*, in 1753, cited by Lord *Redesdale*, in *Joy* v. *Campbell*, 1 *Sch. & Lef.* 344.)

[* 620]

*3. Younger children, as to the provisions for them by will, are regarded as creditors, and may pursue the assets. (*Uvedale* v. *Halfpenny*, 2 *P. Wms.* 151.)

4. That the executor giving his bond to one of the plaintiffs for the legacy due to him, did not extinguish his right to seek payment from the other devisees, out of the estate of the testator.

*S. Jones, jun.*, and *I. L. Riker*, contra, contended, that the legacies were *pecuniary*, not *specific*; (*Wilson* v. *Brownsmith*, 9 *Vesey*, 180. *Lambert* v. *Lambert*, 11 *Vesey*, 607.) and the plaintiffs were not entitled to a greater portion of interest on them than was sufficient for their maintenance. Legacies payable at a future day do not carry interest, unless where the bequest is by the father to a child, and no other provision is made for the child's support. (*Ellis* v. *Ellis*, 1 *Sch. & Lef.* 1—5. *Van Bramers* v. *Hoffman's Executors*, 2 *Johns. Ch. Cas.* 200.) The expense of the

480

maintenance of the plaintiffs, as appears from the testimony of *W. Lupton*, was fully equal to the interest.

The testator did not intend to make these legacies chargeable on his *real* estate. There are no words used which manifest that intention, unless, perhaps, in the clause devising all the real and personal estate not before devised; but these words are not to be understood as meaning the residue, after debts and legacies are paid; (2 *Atk.* 626. n. *Haslewood* v. *Pope*, 3 *P. Wms.* 323. *Forrester* v. *Leigh*, *Ambler*, 173.) the widow had the whole estate for life, which must first expire before any part of the real estate could be applied to pay the legacies. If the real estate is at all liable, it can only be after the personal estate is exhausted. When both the real and personal estate are charged with the payment of legacies, the legatees must look first to the *personal* estate. (4 *Vesey*, 542. 5 *Vesey*, 149. 461. *Prec. in Ch.* 392. 3 *Atk.* 201. 1 *Bro. Ch. Cas.* *144.) There was, in this case, *personal* property amply sufficient to pay all the debts and legacies; and if any *deficiency of assets* has arisen from the *waste* of the executors, the devisees, who are also legatees, are not responsible, or bound to refund. (1 *Pere Wms.* 459. *Walcott* v. *Hall*, 2 *Bro. Ch. Cas.* 305. 2 *Fonbl. Eq.* 371. note (p.) 2 *Eq. Cas. Abr.* 7. 1 *Munf. Virg. Rep.* 440.) Besides, after the whole *fund* had been raised out of the estate, and gone into the hands of the executor, or trustee, the estate was discharged, and the legatees must look to the executor for the money. (5 *Vesey*, 736. 1 *P. Wms.* 518. *Salk.* 153.) The defendants had no notice of the insolvency of the executor, at the time, and cannot be liable to the plaintiffs for the application of the money in the hands of the executor. If they had sued him, he would have had a right to retain the amount demanded by the plaintiffs. Again, if the plaintiffs lose their legacies, it is owing to their negligence, and a want of due diligence, which will preclude them from any relief against the defendants. They might have filed their bill against the executors, and have compelled them to give security for the legacies, or to pay the assets which had come to their hands, into Court. (*Ambler*, 273. 1 *Bro. Ch. Cas.* 105. 1 *Ch. Cas.* 121.) Considering the defendants in the light of sureties, they must, under the circumstances of this case, be considered as discharged by the acts of the plaintiffs. (2 *Vesey, jun.* 542. 3 *Atk.* 91. *Cas. temp. Finch,* 26.)

The deposition of *W. Lupton*, the executor, who has suffered the bill to be taken, *pro confesso*, against him, is good evidence for the other defendants. Having admitted that he has received the assets, and is bound to pay the legacies, he

*1817.*

LUPTON
v.
LUPTON.

[ *621 ]

1817.

LUPTON
v.
LUPTON.

[ *622 ]

is indifferent between the parties. (1 *Phill. Ev.* 53. 2 *Johns. Rep.* 934. 3 *Johns. Rep.* 420. 4 *Johns. Rep.* 126. 2 *Mass. Rep.* 106.)

*The deposition of *Roosevelt*, the guardian *ad litem*, is also admissible evidence. (2 *Dickens*, 781. 3 *Atk.* 604. *Phill. Ev.* 57. 2 *Str.* 1217.)

*Riggs*, in reply, said, that *interest* was payable on the legacies, and the evidence did not show that it had been all applied to the maintenance of the plaintiffs. That from the accounts and proofs in the cause, it appeared that the defendants had received some of the personal estate. The plaintiffs were not bound to wait for the death of the widow, for the payment of their legacies; they might, when the legacies were due, have applied to this Court for a sale of the reversion of the estate. The suit by the infant children of *E. J.* against the executors, in which the alleged account and settlement was made, was not an adversary suit, and the plaintiffs were not parties to the settlement, or implicated in the suit. A bond, *per se*, does not extinguish a legacy. The defendants left no *money* in the hands of *W. Lupton*, to pay the plaintiffs.

THE CHANCELLOR. The right of the plaintiffs to recover their legacies from any of the defendants, except *W. Lupton*, the executor, will depend upon the decision of these two points:—

1. Whether the legacies were a charge upon the real estate:

2. Whether the executor who received, and afterwards wasted them, and charged them, on a settlement with the other representatives of the testator, is not exclusively responsible.

Distinction between pecuniary and specific legacies.

[ * 623 ]

1. The legacies were not specific, but common pecuniary legacies. This character of them cannot well be mistaken. (9 *Vesey*, 180. 11 *Vesey*, 607.) The testator bequeaths the sum of 500 pounds to each of the plaintiffs, when they attain the age of 21, and the like sum to each of them, when they attain the age of 25. These legacies *have been partly paid by the executors, but the amount now due is not material on the questions raised. The only part of the will that gives any color to the construction that these legacies were intended to be a charge upon the land, is the clause which gives the residuary estate to the defendants, or those under whom they claim, and which is in these words : " I give, devise and bequeath, &c. all the rest, residue, and remainder of my real and personal estate, not herein before already devised or bequeathed."

This clause does not appear to me to afford evidence of an intention to charge the land with these pecuniary legacies.

The real estate is not, as of course, charged with the payment of legacies. It is never charged unless the testator intended it should be, and that intention must be either expressly declared, or fairly and satisfactorily inferred, from the language and disposition of the will. This general rule does not seem to admit of dispute. If that residuary clause created such a charge, the charge would have existed in almost every case, for it is the usual clause, and a kind of *formula* in wills. It means, only, when taken distributively, *reddendo singula singulis*, that the rest of the personal estate, not before bequeathed, is given to the residuary legatees, and that the remainder of the real estate, not before devised, is in like manner disposed of. It means that the testator does not intend to die intestate as to any part of his property, and it generally means nothing more.

When the real estate is charged, and not in the most explicit and direct terms, it is usually done in terms that indicate a pretty clear intention that the legacies were, at all events, to be paid. Thus, where the testator devises the real estate, *after payment of debts and legacies*, as in *Tompkins* v. *Tompkins*, (*Prec. in Chan.* 397.) and in *Shallcross* v. *Finder*, (3 *Vesey*, 738.) or where he devises the real estate, after a *direction that debts and legacies be \*first paid*, as in *Holt* v. *Vernon*, (*Prec. in Ch.* 430.) and in *Williams* v. *Chitty*, (3 *Vesey*, 545.) the real estate has been held to be charged. It is not sufficient that debts or legacies are directed to be paid. That alone does not create the charge, but they must be directed to be first, or *previously* paid, or the devise declared to be made *after* they are paid.

There is no such language here, and the plaintiffs are driven to rely on the residuary clause. Sir *Joseph Jekyll* (3 *Atk.* 626. note,) said, that when the testator said, *all the residue of my personal estate I give*, he meant the *residue* of what he had not before specifically devised, and not the residue after debts paid.

In *Brudenell* v. *Boughton*, (2 *Atk.* 268.) the testator gave pecuniary legacies, and then devised the remainder of his estate, real and personal, *after payment of his just debts and legacies*; and Lord Chancellor *Hardwicke* held, that the latter words created a charge upon the land, as a collateral security, after the personal estate had been applied and exhausted. This decision was in conformity with all the cases; but the case contains some further observations, for it appears that the testator had revoked that will, and by another, gave pecuniary legacies to the same persons, reduced one half, and

483

1817.

LUPTON
v.
LUPTON.

The *real* estate is not charged with the payment of legacies, unless so expressly declared by the testator, or that intention is clearly deducible from the language and dispositions of the will.

The usual clause devising the residue of real and personal estate, not before devised, does not imply that the real estate is to be charged.

If the real estate is devised, "after payment of debts and legacies,"

[ \*624 ]

it is then charged with them.

A mere direction to pay debts and legacies does not create a charge on the real estate.

then added, "I give to *S. all the rest of my estate, real and personal.*" The chancellor thought, upon the whole, and after some difficulty, that the legacies in the latter will were, also, a charge; and though the case wants some perspicuity, yet it appears to me to be evident that the two wills were taken and compared together in drawing that conclusion. Lord *Hardwicke* said, that he considered the legacies under the second will, *as part* of the money given by the first, only new modelled, or qualified, or equally a charge. We have no reason to conclude, that if the intention to charge the land with those legacies had not distinctly and clearly appeared in the first will, that he would have deemed the legacies a *charge on the real estate by the words of the second will. The prior will, here, gave a construction to the latter. So, in *Hannis* v. *Packer*, (*Ambler*, 556.) the real estate was well charged by the devise of the residue of the real and personal estate *after payment of debts and legacies*, and the testator there, by a codicil unwitnessed, desired the devisees to give 200*l.* to *B.*, and this legacy in the codicil, though not charged there, was held to be charged by force of the prior will.

But it is sufficient to cite the case of *Keeling* v. *Brown*, (5 *Vesey*, 359.) to show that the construction of this residuary clause is perfectly well settled. The will there directed the debts and funeral expenses to be paid, and then devised several parts of his real estate. The testator then gave pecuniary legacies, and, "as to all the rest, residue, and remainder of his estate and effects whatsoever, whether real or personal," he gave and devised it to *B.* It was agreed by the counsel on both sides, that the legacies were not charged upon the real estate, and the master of the rolls considered it to be a point exceedingly clear.

It appears to me, that a decision on this point settles the case, and that if the real estate was not charged, the devisees of that estate are not to be disturbed. But it may be inferred from the proof, that these defendants, on a settlement with the executor, took some small part, a *scintilla*, of the personal estate, sufficient to call them to an account. I am inclined to think, however, from the facts in the case, that the plaintiffs are bound, at all events, under any construction of the will, to look exclusively to the executor.

2. As *William Lupton*, the executor, has suffered the bill to be taken *pro confesso*, and admits himself to be answerable for the legacies claimed, he has no interest in the questions between the other parties to the suit. He has received the amount of the legacies, and is bound to refund, either to one party or the other. He, therefore, *stands indifferent, or, at
484

least, he has no interest in the success of the defence, and is a competent witness for the defendants. I should rather think that *Roosevelt*, the guardian *ad litem*, is also a competent witness. (*Dickens*, 781. *Wyatt's P. R.* 419.) He can only be liable for costs, and that is a matter of discretion, and depends upon the fact of misbehavior. When infants are sued, some person must appear for them, *ad litem*. It is an act of necessity and good will, and such a guardian is not, of course, chargeable with costs, though the defence should fail. He has no certain and fixed interest in the cause. But the question on his competency is not material, for the same facts which he testifies to are proved by others.

The substance of the testimony, in reference to the second point, is, that the testator left no debts, and that the personal estate which came to the hands of the executors, was equal, and more than equal, to the payment of the legacies. That the plaintiffs, during their respective minorities, were principally supported and educated by the executors; that the real estate in the city of *New-York* was sold under the partition act, and the proceeds divided among the devisees. That, on a settlement between *William Lupton*, the surviving executor, and the other defendants, as residuary legatees under their parents, those defendants were charged with their proportion of the legacies due the plaintiffs, and of the expenses of their maintenance and education, and the amount was retained by the executors, with the assent of the defendants. This settlement puts an end to the claim of the plaintiffs on any other person than the executor.

There is a distinction, running through the cases, between an original deficiency of assets, and where the assets were sufficient, but had been wasted by the executor. In the former case, a legatee, who has been paid more than his proportion, under the deficiency, must refund; but in the latter case, he is not obliged to, for he has received no more than what *was due to him, and the other legatees must look to the executor. The legatee, who has been paid, shall retain the advantage of his legal diligence. This rule was so laid down by Sir *Joseph Jekyll*, in 1 *P. Wms.* 495. (*anon.*) but it does not apply where a *creditor*, instead of a legatee, is in question. On a waste by the executor, a legatee who has been paid, must refund in behalf of a creditor. (*Eyre*, chief baron, in *Hardwicke* v. *Mynd*, 1 *Anst.* 112. *Anon.* 1 *Vern.* 162.) But the authorities stop here; and the case of *Walcott* v. *Hall*, (2 *Bro.* 305.) is such a clear and solemn adjudication on this point, as to place it beyond all further controversy. There was a legacy, in that case, of 50*l.* given to the plaintiff and payable at the age of 21, and the interest,

*margin notes:*

1817.

LUPTON
v.
LUPTON.

witness for the other defendants, or devisees.

It *seems*, that a guardian *ad litem*, is a competent witness, he being, at most, liable for costs only, and that not of course, but in the discretion of the Court, according to the circumstances.

If an executor pays one legatee, and there is, afterwards, a deficiency of assets to pay the others, the legatee, so paid, [ * 627 ] must refund a proportionable part of what he has received.

But if the deficiency of assets has been occasioned by the *waste* of the executor, the legatee who is paid shall retain the advantage gained by his legal diligence; yet, in

485

1817.

Lupton
v.
Lupton.

favor of a cred-
itor, he must
refund.

in the mean time, to be applied to his maintenance. The residue of the personal estate was given to the defendants. The executor retained the legacy for the plaintiff, and paid over the residue to the residuary legatees, and then became a bankrupt. On a bill filed against the executor, and the residuary legatees, Lord *Kenyon*, who was then master of the rolls, declared that the residuary legatees were not liable ; for they had received no more than they were entitled to, and the party must rest on the *devastavit*, and he dismissed the bill. This case is very much in point, and is, of itself, decisive.

A legatee, who uses due diligence, can usually secure himself, and a co-legatee ought not to suffer for his negligence, or stand security for an executor. The Court of Chancery will no doubt, (and cases to this point were referred to by Lord *Thurlow*, in 1 *Bro.* 105.) on proper application, compel an executor to bring in money acknowledged to be in his hands, or give security for a legacy, payable at a future day. There is a case, in 1 *Salk.* 153, (which was referred to by Baron *Graham*, in *Omerod* v. *Hardman*, 5 *Vesey*, 736.) and also the case of *Morgan* v. *Morgan*, cited in 2 *Eq. Cas. Abr.* 7., both of which were cases in the house of lords, in which it was decided, *that if trustees waste a fund raised out of the real estate to pay debts and legacies, or if executors waste a fund out of the personal estate, the real estate, in the one case, is not to be charged with a burden which it has borne once, and in the other, it is said, that the heir is not to suffer for the *devastavit* of the executor.

The personal estate is the proper fund to pay debts and legacies, and in general it is first to be applied, though the real estate may be charged.

There is then, no foundation, on any view of the subject, for the suit against any of the defendants, except *William Lupton*, the executor ; and the bill, as to the rest of them, ought to be dismissed ; and following the case of *Walcott* v. *Hall*, I shall dismiss the bill without costs. But the plaintiffs are entitled to such decree as their bill will warrant, against *William Lupton;* and, as they may wish to take a decree against him, there must, in that case, be a reference, to ascertain the precise amount of the legacies due, with interest from the times they were respectively payable. With respect to the question of interest, it may be proper to observe, that the general rule is, that a legacy payable at a future day does not carry interest, until after it is payable, unless it be a legacy to a *child*, payable at a future day, and the child has no other provision, nor any maintenance, in the mean time, allotted by the will. If there be no such provision,

486

A legatee
may compel the
executor to
bring into Court
money in his
hands, or to
give security,
when the legacy
is payable at a
future day.

[ * 628 ]

The *personal*
estate is the
proper fund to
pay debts and
legacies, and is
to be first ap-
plied, though
the real estate
‥e charged.

A legacy,
payable at a
future day, does
not carry *inter-
est*, until after it
is payable; un-
less in the case
of a legacy to
a *child*, where
the *parent* has
made no other
provision for its
maintenance.

the legacy carries interest immediately, on the presumption that the parent must have intended that the child should, in the mean time, be maintained at his expense; but this implication is destroyed, if any provision, however small, be made for maintenance. (Lord *Redesdale*, in *Ellis* v. *Ellis*, 1 *Sch. & Lef.* 5. Lord *Hardwicke*, in *Hearle* v. *Greenbank*, 3 *Atk*. 716. *Harvey* v. *Harvey*, 2 *P. Wms.* 21. *Crickett* v. *Dolby*, 3 *Vesey*, 10.) But the better opinion, or rather the weight of authority is, that even this humane presumption does not apply to the case of *grandchildren*, and that there *must be something special in the will, for that purpose, in case of a grandchild, or a legacy payable at a future day, will not carry interest. (*Houghton* v. *Harrison*, 2 *Atk*. 329. *Butler* v. *Freeman*, 3 *Atk*. 58. Lord *Eldon*, in 6 *Vesey*, 546. and *Van Bramer* v. *Executors of Hoffman*, 2 *Johns. Cas.* 200. and the case cited in 1 *Sch. & Lef.* 5. against the opinion of Lord *Alvanley*, in 3 *Vesey*, 12. and the doubt expressed in 12 *Vesey*, 23.) In this case there is no pretence for interest, *eo nomine*, before the legacies were due, but a maintenance was directed out of the interest and rents of the estate given them, and beyond such a reasonable maintenance, at the discretion of the executors, they were not entitled.

The bill was accordingly dismissed as to all the defendants, except *William Lupton*, without costs, and a decree, as to him, that he pay the balance of the legacies due, with interest, from the times they were payable, together with the costs of the suit, as against him, and that a reference be had to a master, to ascertain the amount due.

The following decree was entered:—

"That the plaintiffs' bill stand dismissed, as against all the defendants, except the defendant *William Lupton*, without costs, &c.; and that the plaintiffs are entitled to recover from the defendant *W. L.* the arrears of the legacies devised to them respectively, in and by the last will and testament of their grandfather, *William Lupton*, deceased, and in the pleadings set forth with interest thereon, from the times the said legacies respectively became payable, and the costs of this suit to be taxed; and for the purpose of ascertaining how much is due to the plaintiffs respectively, for the legacies bequeathed as aforesaid, and the interest thereon, it is further ordered, that it be referred to a master in chancery, to ascertain, compute, and report what is due to the plaintiffs, and to each of them, for the legacies aforesaid, and the interest thereon to be computed as aforesaid, and that the *master report thereon with all convenient speed. And, inasmuch as the said defendant *W. L.* has not appeared to the plaintiffs' bill, nor defended this suit, and the plaintiffs are, therefore, entitled to proceed before the master, *ex parte*,

it is, therefore, further ordered, that upon the master's report being filed, the same may be confirmed in eight days, by an order to be entered for that purpose, unless the said *W. L.* shall appear before the master, *gratis*, and shall also, within the said eight days, show cause against such confirmation, by filing exceptions thereto; and that, if the said report shall be filed and confirmed as aforesaid, then the plaintiffs may proceed, and have their costs of this suit taxed, and they shall then be entitled to execution, jointly or separately, against the said *W. L.*, for the amount of the said master's report, with interest thereon from the date of the same, and the costs of this suit to be taxed as aforesaid, according to law, and the course of this Court."