The bill in this case, which was filed 18th February, 1836, charged, that Jacob Whiteman made his will April 15th, 1826, and thereby gave to Nancy Whiteman, his daughter, three hundred dollars, to be paid toher in three years after his decease, and appointed his son, Jacob Whiteman, the sole executor; that Jacob Whiteman, on the 5th October, 1832, proved the will as executor, and possessed himself of the personal estate and effects of the testator, to an amount much more than sufficient for the payment of his just debts, funeral expenses,and legacies; that the testator died on the 22d September, 1832; that the said Nancy, otherwise called Ann Elizabeth Whiteman, married with a certain Samuel Kibler, who died about the 1st February, 1833, and that the said Ann Elizabeth afterwards died, on or about the 18th of November, 1833, leaving to survive her one daughter, Sarah W. Kibler, who had previously married with the complainant, John Cloud, who obtained letters of administration *Page 402 
on her estate, about the 30th of December, 1833. The bill contained a specific prayer for relief, that "if the said Jacob Whiteman shall not admit assets of the said testator to answer the said legacy, thenthat an account may be taken of the estate and effects of the saidtestator, which have been possessed or received by the said Jacob, orby any other person by his order or to his use, and that the same maybe applied in a due course of administration." The bill then closed with a prayer for general relief in the usual terms, and for a subpoena, which, from the indorsement on the bill, appeared to have been issued against the said Jacob Whiteman, as executor of Jacob Whiteman, deceased.
The answer, which was filed July 7th, 1836, admitted the statements in the bill generally, but denied that the defendant had any assets applicable to the legacy, and showed that, as executor, he made a full and true settlement of the state before the register, on the 13th of March, 1834, by which it appears that the whole personal estate was exhausted, and that there was a balance due him as executor for over payments of $542 62.
Extract from the will of Jacob Whiteman, dated 15th April, 1826; proved 5th October, 1832.
"I order that all my just debts and funeral expenses shall be paid soon after my decease. Also, I give and devise to my son, Jacob Whiteman, all that part of my plantation, which part I now live on,c., bounded, c., containing 98 acres and 19 perches; to have and to hold to him, my aforesaid son, Jacob Whiteman, his heirs and assigns forever.
Also, I give and devise to my son, Christian Whiteman, all that my lot of land, c., in fee.
Also, I give to my said son Christian, $200, to be paid in three years after my decease; and to my daughter, Fancy Whiteman, the sum of $300, to be paid to her in three years after my decease; and to my daughter, Sarah Whiteman, $300, to be paid in like manner; and to my son, John Whiteman, $300, to be paid in like manner: each of them, my said four children, to be paid the sum of three hundred dollars as aforesaid, in three years after my decease, by my aforesaid son, Jacob Whiteman."
He gave to a grandson, Jacob Whiteman, (son of Jacob,) his desk; and to another grandson, Jacob Whiteman, (son of Christian,) his watch.
"Also, I further give and bequeath to my aforesaid son, Jacob Whiteman, all my personal or moveable property, of any kind, besides what I have hereinbefore, left him, my said son, Jacob Whiteman, whom I do hereby nominate, ordain, and appoint whole and sole executor of this my last will and testament." *Page 403 
The Chancellor doubted whether this will charged the pecuniary legacies on the land; and was of opinion, that if such a charge existed, it sunk for the benefit of the devisee on the death of Mrs. Kibler. He therefore dismissed the complainant's bill. But before the hearing on appeal, he changed his opinion on these points, but adhered to his decree on other grounds. He delivered his views at length before the Court of Appeals.
He said: at the hearing of the cause below, he did doubt whether the land specifically devised could, upon a proper construction of the will, be considered as charged with the payment of the pecuniary legacies, especially as the amount of personal property could not be inquired into apart from the will. 2 Sim. Stew. 592. But supposing the land charged, the legatee having died before the day of payment, he at first entertained the opinion that the legacy hadsunk into the residue.
Upon this question the rule varies according as the charge affects personal or real property. With respect to the former, the rule of the civil law prevails, and dies incerta facit conditionem. But as to the latter, the rule of the common law applies, and this requires that the legatee should be in existence at the time when the legacy becomes payable. At first this rule was universal, and without any distinction, that, being, a condition, the money was not payable unless the whole condition was complied with. This rule was recognized in all the decisions down to that of Van vs. Clark, by LordHardwicke, in 1739, with but two exceptions, Whalley vs.Cox, by Sir J. Jekyll, master of the rolls, 1724, (2Eq. Ca. Ab.) and Jackson vs. Farrand, 2 Vern.
424, by Lord Keeper Wright. See 3 Vesey, jr., 543; 1Bro. Ch. Rep. 119.
In Dawson vs. Killet, 1 Bro. Ch. Rep. 119, an exception is recognized to the common law rule, and which is regarded as settled. It is now considered that if a testator devises a life estate, and charges the legacy on the remainder, the death of the legatee, prior to the day of payment, does not cause the legacy to sink, but it is vested. This is held to be so, because the postponement, being on account of the convenience of the estate, it is apparent that the testator, by deferring payment of the legacy until the expiration of the life estate, designed the legacy should not be raised to the prejudice of the life estate, and not until the estate came into possession out of which it was made payable; and hence the delay of payment, having no reference to the person or situation of the legatee, his death, prior to the time of payment, shall not defeat the bequest. In all cases of this description, it may be said the intention manifested on the face of the will, controls the rule of the common law. *Page 404 
In this case, the chancellor at first doubted, but upon further consideration of the provisions and language of the will, and especially of the clause directing his son Jacob to pay the legaciesin three years after his decease, he being the devisee of the greater part of the real and all the personal estate, he thought the case was fairly within the exception to the common law rule, and that the legacy did not lapse. He now considered the true construction of the will to be that which regards it as a. distribution of the testator's whole property among his several children, absolutely and in no respect contingent, conferring at the death of the testator interests which were immediately vested, and the payment of the several sums bequeathed postponed for the convenience of the estate. In all cases of portions the reason of the rule must determine the propriety of its application. If the provision be for a minor child, payable at a future time, the death of the legatee under age, and before the time arrives for payment, renders it unnecessary to raise the sum charged, inasmuch as it is not wanted; hence, sums bequeathed to minor children, payable at twenty-one or marriage, are not vested until the time of payment arrives, when charged on or to be raised out of land. In all these cases, the time fixed or appointed for raising or paying the legacy has reference to the circumstances of the person to take, and the postponement results from the age and condition of the legatee, and is unconnected with, and cannot be referred to the estate charged. Besides, the general period of postponement being until marriage or twenty-one, indicates the intention of the testator, that the sum charged was to be raised for a certain purpose, and to provide for a certain event; that failing or not occurring, there is reason for saying the sum ought not to be raised if the legatee die before the time; because, by the death, the purpose contemplated by the testator fails, and the provision is not wanted. But in this case, the situation of the legatees did not present them as coming within the reason of the rule applied to minors, and the words of the will, not postponing the payment to a definite period of time, but directing payment in
three years after testator's death, are clearly indicative of the intent, not that payment should not be made sooner, but that the devisee was to be allowed that as the ultimate time within which to raise and pay the legacy charged; hence the inference is strong, that the time was given for the convenience of the estate charged; and as the legacy was payable within the time, and might have been paid earlier than at the expiration of the time, it was a vested legacy, and on the death of the legatee, transmitted to her personal representative.
But, with this construction, no decree could be made in this cause, *Page 405 
against the executor of Jacob Whiteman, so as to affect the title of the son in the land devised; and the chancellor viewed his decree, dismissing complainant's bill, as still correct. The bill was filed against defendant as executor for the payment of a legacy, and the liability is upon him as devisee of the land charged, and in respect of the land. The charge is personal to the son, and not as the represenative of the testator's estate, in which capacity there is no liability, and no fund in his hands applicable.
The following causes of appeal were assigned:
1st. Because the chancellor decreed that the legacy bequeathed to Nancy Whiteman, afterwards Nancy, or Ann Elizabeth Kibler, was not charged by the will of the said Jacob Whiteman, on the lands devised to his son, Jacob Whiteman.
2d. Because he decided that this legacy lapsed by the death of Mrs. Kibler.
The case was argued on appeal by W. H. Rogers, for the appellant, and by Wales, for the appellee.
On behalf of the appellant it was contended:
1st. That by the manifest intention of the testator, the legacy to Nancy Whiteman was designed to be a charge on the real estate devised to Jacob Whiteman, to be pain by him in respect of the land and not as executor. Earn on Assets, 64; 8 Law Lib. 44; 3Eq. Ca. Abridg. 497; 2 Fern. 228; 2 Atk. 268; 3Atk. 352; 1 Ves. sen. 499: 4 Mad. 187.
Where a testator directs debts or legacies to be paid by his executor, and devises land to the executor, the debts are chargeable on the land; the title executor being only descriptio personæ, and not of character.
That this case was even stronger than that, it being a devise of land to his "son," and a direction that the legacies should be paid" by that son.
2d. That in regard to the lapsing of this legacy, the distinction was established between a legacy contingent at a future day, and a legacy not payable until a future day. 8 Law Lib. 86; 2 Williamson Executors, 766; 3 P. Wms. 119; 3 Wms. on Ex'rs.
779, 780; 3 P. Wms. 172; 1 Brown's Ch. Ca. 119;Ambler, 190.
Wherever it can be gathered from the circumstances of the case, that the postponement of the legacy was for the ease or benefit of the estate, and not in reference to the wants of the legatee, the legacy vests; and if it be charged on land, either directly, by proviso, or inference, it does not lapse or sink into the land by the death of the legatee, before the day of payment.
 For the appellee is was urged, *Page 406 
That pecuniary legacies are never a charge on real estate, but are payable out of the personal funds, unless expressly or by necessary inference charged on the land. It has been regretted, that the rule was ever relaxed so as to let in cases of inferential charge; but it has been confined to cases where the intention is as manifest as if the charge was express. Neither the want of personal funds, nor the devise of the land to the executor, has of itself been considered a circumstance sufficient to make out the charge. Ram on Assets,
87, 8, 9; 2 Johns. Ch. Rep. 614; 2 Simon and Steward's Oh.Rep. 592. The intention to charge the real estate must be clearly ascertainable from the will itself, and not from any thing out of it.
2d. By the settled rule of the English law, such a legacy as this lapses by the death of the legatee, and sinks; unless there be something derived from the circumstances of the estate to show a different intention.
By the Court:
The argument of this cause in this court has turned upon questions which are not presented by the case made in the bill. We are not called upon to decide whether the land which Jacob Whiteman devised to his son Jacob was charged with the legacy, nor whether the son was personally liable for the legacy by reason of the devise to him, and the acceptance of that devise by him. The bill states a case againstthe executor alone, and prays the payment of the legacy out of the estate in a due course of administration. The will of the testator, which is a part of the evidence, shows that certain lands of the testator were devised to his son Jacob, and that Jacob was directed to pay the legacy in three years after the decease of the testator: considering the legacy as one which did not lapse and fall into the residue of the estate, and that Jacob by accepting the devise to him would become bound to pay it, yet we see no pretext for a decree that Jacob, as executor was bound to pay it in a course of administration; nor do we perceive upon the face of this bill, that Jacob the son, was liable as devisee, or personally, in consequence of his acceptance of the devise. The bill does not charge that he was devisee, nor does it state that he accepted any devise or gift of this land so as to render him personally responsible for the legacy, according to the cases in 10 Johns. Rep. 148; 6 Johns. Ch.Rep. 36, 38. For the reason, that the case made bythe bill is against the the executor, who is not liable as such in any sense, for the payment of this legacy, as he has greatly overpaid the personal estate in the discharge of debts and funeral expenses, we cannot under a general prayer for relief, *Page 407 
decree the payment of the legacy by him as a devisee, or that he is personally answerable for it in virtue of the will. And to enable us to charge him personally according to the cases cited, or as a devisee of land charged, it should have been averred in the bill that the devise was made, and that he had accepted it. In case such a bill had been filed, yet had the answer denied the acceptance of the devise and been sustained By proof, the decree of this court could not have been for the payment of the legacy. To decree payment of the legacy by Jacob Whiteman, as executor, would be to deprive him of his just defence on this ground. Should a bill be filed against him personally, setting forth the facts stated in this, and the additional facts of the devise, its value, and his acceptance of that devise, there may be a case made for a decree that he shall pay the legacy; but that decree could not in any event be against him as an executor. We only re-affirm the principle decided in 1 Johns. R. 559, Bebee vs.Bank of New York, that "the relief granted must be agreeable to the case made by the bill, (Mitford's Pleadings, 38,) and that the court will not in all cases permit a bill framed for one purpose to answer another, especially if the opposite party may be thereby surprised or prejudiced whence we decide that the bill be dismissed without prejudice to any future application for relief, and that the decree of the chancellor be affirmed with costs.