Brinkerhoee, J.
Asa Beckwith, late of Licking county, Ohio, made his will, and died; leaving a widow, and three-sons and a daughter surviving him. Of the three sons, Eli B., Asa Orlando, and Charles B., the latter two were minors; and *130 the daughter, Sarah, was the youngest of all, and only about nine years old.
The will was duly admitted to probate, and is as follows :
“ Item 1. It is my will that all my just debts and funeral expenses'be fully paid.
“ Itepi'2. I give and devise to my beloved wife, in lieu of her ■dower, the house and lot, with the appurtenances, on which I now reside, in the town of Newark, and known and designated on the recorded plat of said town, as in-lots 6Y and Y0, being 128 feet on the westerly side, etc., for and during her natural life. I also give and bequeath to my said wife the sum of $1500 to be paid to her in annual payments of $300 each, the first payment to be made at the end of one year after my decease, and the other payments to be made annually thereafter.
“ Item 3. I give and bequeath to my son Eli B. Beckwith, the sum of $2000, to be paid to him within a reasonable time after my decease, on condition that my said son will accept the said sum of $2000 in full satisfaction for his interest in the profits and property of the firm of A. Beckwith & Son, of which he is a member.
“ Item 4. I give and bequeath to my daughter, Sarah Elizabeth Beckwith, the sum of $1500, to be paid to her when she arrives at the age of majority; the interest thereon to be paid annually after my decease, for her support and education until she arrives at the age of majority.
“ Item 5. I give and bequeath to my said wife Sarah my gold watch, also all my household and kitchen furniture of every description whatever.
“Item 6. It is my will that all the residue of my estate, both real and personal, be divided between Eli B. Beckwith, Asa Orlando Beckwith and Charles B. Beckwith, share and ■share alike.
“ Item Y. I direct my executors hereinafter named to sell ■as soon after my death as they may deem advisable, and for the interest of my estate, on such terms as they may think best, and in the way they may think best, all my farm stituate in the county of Crawford and State of Ohio, purchased by *131 me of the heirs of John Beckwith and Isaac Sweeney, estimated to contain two hundred and forty odd acres.
“ Lastly, I nominate and appointed my friend Ezekiel S. Woods, of said town of Newark, and my said son Eli B. Beckwith, the executors of this my last will and testament, hereby revoking all former and other wills by me made, and declaring this, and this only to be my last will and testament.”
The personal estate of Asa Beckwith, and the proceeds of the sale of the Crawford county farm, proved to be insufficient to pay both debts and legacies, and the legacy of Sarah being unpaid, the residuary devisees and their representatives filed their petition in the common pleas of Licking county for a partition of the real estate, which resulted in a sale of the premises. Sarah, and her husband, the plaintiff in error, having been made parties defendant in the ease, answered, claiming that the legacy bequeathed by her father to Sarah should' be charged upon the real estate. The common pleas decreed in favor of this claim; but, the case having been appealed to the district court, that court decreed otherwise; and to reverse this latter decree, this petition in error is prosecuted.
The sole question made in the case is, whether, failing a sufficiency of -personal assets to pay both debts and legacies, the legacy to Sarah is chargable upon the real estate of the testator.
The answer to this question depends on the intention of the testator, expressed in his will, or clearly derived, by fair implication, from its provisions. “ Express words are not necessary to charge pecuniary legacies upon the real estate. An intention to do so, may be derived by implication. But where a devisee is not directed to pay such legacies, and they are sought to be charged upon the property devised, on failure of the personal fund, or in exoneration of that fund, the language of the will must be so explicit as to enable the court to see clearly that the testator contemplated such charge, and intended to provide for it.” Clyde v. Simpson, 4 Ohio St. Rep. 445. What, then, was the intention of the testator, *132 either as expressed by, or clearly inferable from, the language-of his will ? Did he intend that his legacy to his daughter Sarah, should be paid to her only in case his personalty and the Crawford county farm proved to be sufficient to pay the debts and legacies ? Or did he intend that her legacy should be paid at all events, even though a part of the remainder of his real estate should have to go for that purpose?
In order to determine this question, we are entitled to put ourselves “ in the place of the party, and then see how the terms of the instrument affect the property or the subject matter.” 1 Jarman on Wills, 342, note. We may look at the language of the will “ in the light afforded by the circumstances under which it was made, and the subjects to which it relates the language of the will “ is to be viewed sensibly and liberally, in order to give effect to the testator’s intentions. Of all the-instruments that need the benefit of a liberal construction — a construction that prefers substance to mere form — wills need it the most.” Thompson v. Thompson, 4 Ohio St. Rep. 351.
What, then, were the circumstances, of property and family, in the light of which the language of the will is to be considered, and constituting the standpoint of the testator when he made his will ?
He was the owner of a considerable estate, real and personal ; and was also largely indebted. He had a wife, three sons and a daughter. Two of the sons were minors, but the daughter was youngest of all, and only about nine years old.
Under these circumstances, the testator by his will gives a house and lot for life, and a pecuniary legacy of fifteen hundred dollars, to his wife, in lieu of dower, and also his gold watch and household and kitchen furniture. To his eldest son, he gives two thousand dollars, on condition that he accept the same in full satisfaction for his interest in the profits and property of the firm of A. Beckwith & Son, of which the son was a member. Then follow the bequest to his daughter, and the residuary devise and bequest in favor of his sons, in these words:
“ Item 4. I give and bequeath to my daughter, Sarah Elizabeth Beckwith, the sum of $1500, to be paid to her when she *133 arrives at the age of majority; the interest thereon to be paid annually, after my decease, for her support and education, until she arrives at the age of majority.”
“ Item 6. It is my will that all the residue of my estate both real and personal, be divided between Eli B. Beckwith, Asa Orlando Beckwith and Charles B. Beckwith, share and share alike.”
Now, it seems to me, that if, untrammeled by artificial rules of construction, we look at the terms of this will in the light of the testator’s circumstances, there can be no reasonable doubt of his intention that Sarah should have her legacy at all events; and that in case of a deficiency of personal assets, it should be charged upon the land.
The devise of the house and lot to his wife, was for life only, and the remainder would pass to his sons, under the residuary devise. The bequest of two thousand dollars to his eldest son, was but a kind of testamentary purchase of his interest in the firm of A. Beckwith & Son. The real estate ■of the testator was large; and so, as the event, proved, was the amount of his debts; of which fact, it is fairly presumable, he could not have been ignorant. The legacy of fifteen hundred dollars to his daughter, was the sole provision made for her in the will. If she failed to get this, she got nothing. She was of tender years and tender sex, appealing powerfully' to every paternal instinct, and little fitted to provide for herself. Moreover, it is evident that it was the intention of the -testator that the principal sum of his daughter’s legacy should be raised and invested immediately; that it should not await the possibly tardy process of the settlement of his estate; for, though the principal sum was to be paid to her on her majority, “ the interest thereon ” was “ to be paid to her annually, after ” his “ decease, for her support and education, until she” ■arrived “ at the age of majority.” And, finally, the residuary devise and bequest to his sons, was not a merely formal residu- ■ ary clause, thrown in from abundant caution to prevent a partial intestacy from a possible failure of recollection as to some portion of his estate not specifically disposed of,' but w-as a •substantial devise and bequest, evidently intended to dispose *134 of the bulk of his estate, containing the only provision for his younger sons, and all that he gave.by way of bounty to the elder.
Erom these considerations, we can not resist the conclusion, that the testator meant no more nor less than if, in giving instructions to a scrivener to prepare a draft of his will, he had said, “ Let my house and lot for her life, and fifteen hundred dollars in money, in annual payments of three hundred dollars each, be given to my wife, in lieu of dower; and also my gold watch and household and kitchen furniture.
“ Let Eli have two thousand dollars in satisfaction for his-interest in our firm.
“ Let fifteen hundred dollars be immediately invested for little Sarah; £ the interest thereon to be paid annually after my decease, for her support and education, until she arrives at the age of majority,’ 'and then the principal to be paid to her.. And whatever is left of my estate, after the payment of my debts and these legacies, whether it be real or personal, let it' be divided between my three sons, £ share and share alike.’ ”
In the construction of a will, in order to determine whether the testator intended a legacy should, on failure of personal assets, be charged upon his real estate or not, the authorities-are clear that the fact of the legacy being the only provision in the will for a child, is entitled to great weight; thus distinguishing between a legacy which is a matter of mere bounty to the legatee, and one which is a provision for a child. And it would seem that this fact alone is sufficient to turn the scale, where the provisions of the will are otherwise dubious. Thus in Roper on Legacies, 682, it is said — “ that where an unprovided child or creditor is the person endeavoring to establish the charge, the court will incline to their favor, if the inference of the intent to charge be dubious.” And in Uvedale v. Halfpenney, 2 P. Wm. 153, the master of the rolls, discussing the construction of a deed of settlement, says — ■ ££ younger children, as to their provisions, although by will,, are looked upon in the nature of creditors.” In Givins v. Givins, 1 Murphey’s Rep. 192, the testator directed the debts to be paid out of his personal estate; charged- his real estate- *135 ■with the maintenance of his wife; gave one thousand pounds to an only daughter, and after giving other pecuniary legacies, gave the remainder of his estate to his three sisters. The •court held the legacy to his daughter to be a charge, upon the real estate; and say — “ it would be unreasonable to give the will such a construction as ’would give the sisters their residuum, and deprive the daughter, an only one, of her pecu niary legacy; more especially when it can not be collected from the will, that any intention of that sort was entertained by the testator.”
If we throw out of view the fact that the legatee here was a daughter, otherwise wholly unprovided for, and the evident intention of the testator that her legacy should be immediately invested, and out of the interest on which she was to be supported and educated during her minority, and look only to that clause of the will by which the residue of his estate, both real, and personal, is given to his three sons, share and share alike, the question as to whether the intention to. charge the legacies upon the real estate, in case of a deficiency of personal assets, can be inferred from such a residuary disposition alone, is, by the authorities left,in doubt.
It is a well established rule in the interpretation of wills, that where, by the terms and provisions of the will, the real and personal estate are blended into one common fund, this is decisive of the intent of the testator to charge the legacies on the real estate in case of a deficiency of assets. And there is also a class of cases which hold that where pecuniary legacies alone are first given, and no part of the real estate is specifically devised, and then a residuary clause devises and bequeaths the residue of the real and personal estate, the legacies will be a charge upon the land; and this, it has been said, may be justified on the ground that no part of the real estate having been before devised, there could be no residue of real estate, unless in the mind of the testator the lands were to be charged. Paxson v. Potts, 2 Grreenl. Ch. Reps. 313. But this inference, it is said, can not be dray n in a class of cases to which the one before us belongs; where there is a prior specific devise of real estate (as, in this case, the devise of the house and *136 lot to the wife for life); and which leaves a residue of real estate to which the residuary clause may'refer, without infering a charge of-legacies on the lands. And on this particulár question, to-wit: whether, where there is a specific devise of real estate, and there are also pecuniary legacies, and then a general residuary clause covering both real and personal estate, there is such a blending of the realty and personalty as to justify the inference that the testator intended to charge the legacies upon the realty, in case of a deficiency of personal assets, it can not be denied that the cases are involved in irreconcilable conflict.
The case of Lupton v. Lupton, 2 Johns. Ch. Rep. 614, is directly in point against such an inference. On this case we will venture to remark, however, that one of the leading reasons on which the chancellor, arguing on principle, bases his decision in that case, can not be properly applied to the case now before us. Speaking of a residuary clause in a will, and deprecating the idea of giving to it any great or special weight in the determination of the question, he says — “ it means that the testator does not mean to die intestate, and it generally means nothing more.”
Now, however true this observation may be of many wills, or of wills in general, it certainly is not true of the will we are now considering. Wills are as variant as the human countenance ; and, especially when viewed from the standpoint of the testator, no two of them are ever exactly alike. Hence the danger of merely artificial rules of construction. In this will, the residuary clause is not a mere formality, or designed to prevent a possible partial intestacy, from failure to recollect some item of the testator’s property; but was a substantial provision; the sole provision for the benefit of his two younger sons; and evidently intended to dispose of the larger share of his estate.
The cases of Paxson v. Potts, 2 Greenl. Ch. Rep. 313, and Gridley v. Andrews, 8 Conn. 1, are also in point against the inference of an intention to charge the real estate in such a case.
On the other hand, there are numerous cases directly the *137 ■other way. Among them is Hassanclever v. Tucker, 2 Binney, 625, decided, after full argument, by the court of errors and appeals of Pennsylvania, in 1803. In that case, “ the testator ordered his just debts and funeral expenses to be paid by his executors, and then bequeathed a legacy of 500i. to his niece A., to be paid her in one year after his decease, and in case of her death, to be divided among her three sisters. He -devised specific real estate to B., and a legacy of 100Í. to be paid at lawful age, but in case of his death, unmarried, the land and money to sink into his residuary estate. The rest and residue of his estate, real and personal, he devised and bequeathed to his brothers and sisters, their heirs and assigns, ■as tenants in common.” It was “ held, that the testator having blended his real and personal estate, the real was subject to the burden of A.’s legacy, upon the deficiency of the personal,” and that the words rest and residue meant “ what was left after the payment of debts and legacies.” This case was afterward cited, with approval, by Tilghman, C.J., in Witman v. Norton, 6 Binney, 395.
The next case, in the order of time, to the same effect, is Mirehouse v. Scaife, 14 E. Ch. Rep. 695, decided by Lord Chancellor Cottenham, in 1837. There “ a testator, after bequeathing a number of pecuniary legacies to different persons, -and giving a certain field to his godson, directed that all his debts and the above legacies should be paid and discharged within six months after his decease; and all the rest and residue of his estate, both real and personal, he gave to N.” The personal estate proving insufficient to pay the debts and legacies, it was held, “ that both the debts and legacies were, by the words of the will, effectually charged upon ” the real estate. The only want of analogy between that case and the one before us, so far I can see, is this — that there, the principal of the legacies, were to be paid within six months after the testator’s decease; while here, the legacy to Sarah was to be paid -on her arriving at the age of majority; but, as it is evident that the testator here intended that the principal of her legacy should be immediately invested for her benefit, and that she should be supported and educated out of the annually accruing *138 Interest, we think that the want of analogy is too slight tc affect the principle of the case.
Next comes the case of Lewis v. Darling, decided unanimously by the supreme court of the United States in 1853, 16 Howard’s R. 1. In that ease it appears that the testator had made sundry specific devises of real estate, and had made sundry bequests of money without creating an express trust to pay them, and had “blended the realty and personalty of his estate together in one fund, in the residuary clause.” The court say: “ The rule in such a case is, that where a testator gives several legacies, and then, without creating an express trust to pay them, makes a general residuary disposition of the whole estate, blending the realty and personalty together in one fund, the real estate will be charged with the legacies; for, in such a case, the ‘residue’ can only mean wha.t remains after satisfying the previous gifts.” “ And such,” it is added, “ is the settled law both in England and the United States, though cases do not often occur for its application.” This case, it will be seen, is directly in point upon the question under consideration; and so is the case of Francis v. Clemow, 23 E. L. & E. R. 125, decided by Wood, V.C., in 1854. There, “ a testator, by his will, .... gave certain pecuniary legacies, and some interests in his real estate, and then gave all the rest and residue of his estate and effects, real and personal, to his son absolutely, and appointed him sole executor — held, that a pecuniary legacy was raisable out of the residuary real estate.”
So far as we know, this case, and that of Mirehouse v. Scaife, remain the unquestioned law of the English courts up to this time; and the case of Lewis v. Darling remains the rule of decision in the federal judiciary. It seems to us, therefore, that whether we consider the number or the date of the decisions, the decided preponderance of authority is in favor of the proposition, that -where there are pecuniary legacies in a will, and a partial disposition of real estate by specific devises, followed by a general bequest and devise to other parties of the residue of the real and personal estate, such re-' siduary clause is such a blending of the real and personal es *139 tate in one common fund, as to justify the implication that the testator intended, in case of a failure of personal assets, to-make the legacy a charge upon the realty.
But it is not necessary for us to go so far as these latter cases go, in order to decide that Sarah’s legacy, in the case before us, ought to be charged upon the real estate. It is enough, if, looking to the residuary clause and other parts of the will, we find the question to be left dubious; for then the fact that her legacy was the only provision in the will for an otherwise unprovided daughter, comes in, under the authorities before cited, to turn the scale in her favor. And to those authorities is to be added the case of Lypet v. Carter, 1 Vesey, sr., 499, where the case is thus stated: “ Testator in the beginning of his will says, as to my worldly estate I dispose of as follows: gives £100 to his daughter Susan, Avhich he directs-to be paid by his executors to her separate use Avithin a month after the decease of his AvidoAV, to AYhom he devises the real estate he had (describing AArhere it lay), and also the use of his-household goods, furniture and stock in trade, during life; and after her decease to his son John Carter, his heirs and assigns forever: appoints tAvo trustees and overseers of his Avill, and desires them to see it duly performed; all the rest and residue of his goods, chattels, and personal estate, not before disposed of, he gives to his son, John Carter; making-him executor.” It will be seen that the analogy betAveen that case and this is complete.. In that case, as in this, there Avasa devise of real estate, and a bequest of personal estate, to the widoAv for life; a pecuniary legacy to an otherwise unprovided daughter; and a residuary disposition-of both real and personal estate to a son. On a deficiency of personal assets,, the daughter’s legacy Avas charged upon the real estate.
There are many other cases Avhich have a bearing, more or less remote, upon' the case before us; but as they are too numerous for particular notice in this opinion, they have been passed over; and I have confined myself to those cases Avhich seem to me directly in point upon the questions considered And, from a reviow of the cases generally, I think it is apparent that there is a groAving disposition in the courts, both of *140 England and the United States, in the interpretation of wills, to lessen the old distinction between real and personal estate; .and that this disposition is well justified, and readily accounted for by a reference to the gradual breaking up of feudal distinctions in England,' under the advancing commercial spirit • of our age, and by the fact, that, in this country, land has always been regarded, like personalty, as a subject of ordinary commerce, invested with no peculiar sacredness, and, in the minds of testators, regarded as being on a level with ordinary assets.
Judgment of district court reversed, and decree charging proceeds of real estate with balance due on daughter’s legacy.
Peck, O.J., and Scott and Ranney, JJ., concurred.
Guolson, J., dissented.
Note by Judge Brinkerhoee. — Since the foregoing opinion was delivered, I have lit upon the case of Greville v. Browne, recently decided by the house of lords, and reported in 7 House of Lords Cases, 689; in which the doctrine of this case is sustained to the fullest extent by the opinions of the law lords, as there reported.