ROGERS *v.* WALKER. (Intervention of BUSH & LEVERT.)[1]

*(Circuit Court, E. D. Louisiana. June 24, 1885.)*

1. LIENS AND PRIVILEGES—CIVIL CODE LA. ART. 3217.
    The privilege purporting to be given by paragraph 3, art. 3217, Civil Code La., "on everything which serves to the working of the farm," should be construed to apply only to such things as serve to the working of the farm, but do not constitute a part of the farm itself; that is, to movables by nature and destination,—movables serving to the making of the farm, but not belonging to the *owner*.

2. SAME—WAGES OF LABORERS ON PLANTATION.
    The services of laborers on a plantation inure directly to the benefit of those having liens or privileges upon the crop, in preserving the thing on which their mortgage and privilege rested, and therefore were entitled to an equitable as well as a statutory lien on the proceeds of the crop, but they in nowise benefited the owner of the land, and their wages have no equitable lien whatever against him, and a very doubtful statutory privilege.

3. SAME—MOVABLES AND IMMOVABLES.
    The Civil Code La. arts. 3253–3270, inclusive, contemplate that privileges bearing on both movables and immovables shall be first satisfied from the movables before resorting to the immovables; and this seems to be also the equitable rule in marshaling assets.

On Distribution of Proceeds of Sale of a Plantation and its Crop.

*Don A. Caffrey* and *F. L. Richardson,* for plaintiff.

*Chas. B. Singleton, R. H. Browne, B. F. Choate,* and *E. D. White,* for intervenors.

PARDEE, J. The intervention and opposition of Bush & Levert, claiming the laborer's lien and privilege on the proceeds of the plantation sold to satisfy complainant's mortgage, to the extent that such proceeds may be made up from or by the value of the movables by

---

[1] Reported by Joseph P. Hornor, Esq., of the New Orleans bar.

nature, but immovables by destination, sold with and as a part of said plantation, will be rejected, because—

(1) I doubt if, under the Code, laborers on a plantation have any privilege on immovables. The privilege purporting to be given by paragraph 3, art. 3217, Civil Code La., "on everything which serves to the working of the farm," should be construed to apply only to such things as serve to the working of the farm, but do not constitute a part of the farm itself; that is, to movables by nature and by destination,—movables serving in the working of the farm, but not belonging to the owner. This seems clear, because the section of the chapter of the Code containing the article is specially designated, "Of the privileges on particular movables," and because the landlord or lessor is given the same privilege in the same paragraph; and it is absurd to give the lessor a privilege for rents on his own property, constituting, by law, a portion of the thing leased. The privilege in 3217, given for laborers' wages, is exactly the same as that given in the old Code for *the hire of slaves;* and yet, in the jurisprudence of Louisiana, there is not a reported case that I can find where such privilege was ever claimed on immovables by destination. In the chapters of the Code devoted to "privileges on immovables" and "privileges which embrace both movables and immovables," no such privilege is referred to.

(2) Because the services of the laborers, for whose wages a privilege is claimed, inured directly to the benefit of the intervenors, in preserving the thing on which their mortgage and privilege rested,— in fact, as they say in their bill, "prevented the loss and destruction of the crop,"—and therefore was entitled to an equitable as well as a statutory lien on the proceeds of the crop; while the services of the laborers in nowise benefited the complainant, and against him the said wages have no equitable lien whatever, and, as I think, a very doubtful statutory privilege.

(3) Conceding that the laborers' wages have, by law, a first privilege on the crop, and on the plantation to the extent of the mules and implements of husbandry thereon, and that intervenors are rightfully subrogated to that privilege, yet, as the Code (articles 3253–3270, inclusive) evidently contemplates that privileges bearing on both movables and immovables shall be first satisfied from the movables before resorting to the immovables, it follows that, when the proceeds of the crop came to the hands of the intervenors, they were bound to apply them to the satisfaction and payment of the laborers' wages which they had paid, and to the privilege of which they had been subrogated, before they can claim a resort to immovables. The rule claimed as above, for the Code of Louisiana, seems to be also the equity rule in marshaling assets. See Fonbl. Eq. 288; *Lupton* v. *Lupton,* 2 Johns. Ch. 628; *McKay* v. *Green,* 3 Johns. Ch. 58.

(4) Except as above, I can see no advantage in resorting to the equity jurisprudence in relation to marshaling securities, as stated in 1 Story, Eq. Jur. § 538, note, and cases cited; 3 Pom. Eq. Jur. § 1414,

notes, and cases; because, while there may be said to be two funds, there are two liens claimed on each fund. On the crop fund there is— *First*, the laborer's lien; and, *second*, the factor's lien. On the plantation fund, to the extent of the mules, etc., there is claimed—*First*, the laborer's lien; and, *second*, the mortgage lien. Rogers says "the laborers have two securities, while I have only one;" and the intervenors, while they are hampered with the fact that they hold both the laborer's and the factor's lien, make practically the same claim. It rather seems to be a case for the application of the maxim, *qui prior est tempore, potior est jure.* See Broom. Leg. Max. 263.

(5) The fund in court has been brought in by the complainant Rogers to satisfy his acknowledged prior—in time—mortgage, and the intervenors show no superior right or equity; and there is no basis in the case to render any decree recognizing a concurrent equity.

(6) For all the foregoing reasons, I am satisfied that the equity of the case is with complainant, Rogers.