CASE No. 989.

BILDERBACK v. BOYCE.

1. Real property was devised to trustees to permit A to take the income for life, with remainder to such persons as A, by his last will, should appoint, and in default of appointment, to A's children. A, by his will, devised "all the rest and residue of my estate wherever and whatever," but his will did not mention the power nor the trust property, and A had real estate in his own right. *Held*, that there was no execution of the power.

2. The English and American doctrine stated, and *Blagge* v. *Miles*, 1 *Story* 426, recognized and followed.

---

Before THOMSON, J., Charleston, July, 1880.

Action commenced by Joseph A. Bilderback, James Spann Boyce and Latimer Boyce against James P. Boyce, trustee, and Mary E. Boyce, for possession of the "Merchants' Hotel," in Charleston. It was referred to W. D. Porter, master, to hear and determine all the issues in the cause. The report of the master, after stating the facts (which it is unnecessary to repeat, as they are fully set forth in the opinion of this court,) was as follows:

There is no reference in Samuel Boyce's will to the power or the property, and the evidence shows that he died seized and possessed of other real property on which the will might operate. The first and principal question in this case is whether the will of Samuel J. Boyce is to be regarded as a good execution of the power given him by the will of his father, Ker Boyce, in rela-

tion to the Merchants' Hotel. The settled rule in relation to wills is that the intention of the testator must be carried into effect. But to ascertain this intention, particularly in relation to the execution of powers, the courts in England adopted, from time to time, certain artificial rules, which they regarded as signs or demonstrations of intent; at one time an express reference to the power was required, but in *Bennett* v. *Aburrow,* 8 *Ves., Jr.* 616, Sir William Grant said, "that is not necessary." But it was in the application of the rules that the greatest difficulty arose. The case of *Doe d. Nowell* v. *Roake, in* 1825, 2 *Bing.* 510, contains a very full review of the English cases. It showed that the judges differed very much as to what should or should not be regarded as the evidence or demonstration of intent. The distinctions and refinements resorted to created great dissatisfaction, which was judicially expressed, from time to time. At last, in the case of Nannock *v.* Horton, Lord Eldon, speaking of the rule distinguishing power from property, said : "I am not sure it [the rule] does not oblige the court to act against what might probably have been the intention nine times out of ten." 7 *Ves., Jr.,* 398. In *Amory* v. *Meredith,* 89 *Mass.* (7 *Allen*) 399, it is stated that after the death of Lord Eldon, his successor, as master of the rolls, reversed the decision, accompanying his judgment with the remark, " I fear that the intention of the testatrix may be defeated by my decision." A curious commentary, this, upon the application of arbitrary rules to the ascertainment of intent in a will. Sir Edward Sugden (Lord St. Leonard) has reviewed the cases in his book on Powers. He says it is impossible not to be struck with the number of instances where the intention has been defeated by the rule distinguishing power from property. *Sugd. on Powers, vol. I., p.* 401, § 76.

It is said that Lord St. Leonard was contemplating a remedy through the courts, but by the statute 1 *Victoria, c.* 26, in 1837, the rule was changed, and it was declared that a general devise of real or personal estate in a will should operate as an execution of a power of testator over the same, unless a contrary intention should appear in the will. The question now is, how do our courts stand in relation to the doctrine distinguishing power from property in a will ? Will, or will not, a general de-

vise in a will operate as an execution of a power, when a contrary intent does not appear? It is conceded by counsel on both sides that there is no adjudged case in our state settling the question. My own examination has found none. It is a new question, *res integra,* and our courts are now, for the first time, to entertain and settle it. It is argued that we are bound by the old rule of construction, inasmuch as the act of 1712 makes the common law a part of the law of the state. Unless there has been a recognition of it in our courts, I do not consider that any old rule of the English Chancery Courts is binding upon our courts, unless it commends itself· to our reason, and certainly not where those courts have formally abandoned it. In the case of *Ring* v. *Huntington,* 1 *Mills' Const. R.* 165, Judge Cheves said : " The act of assembly [1712,] as it has been practically construed, contained rather a privilege than a command to adopt the common law except in its great and leading principles, and we, in effect, have only adopted it when we thought it reasonable and just; at least we have not thought it necessary to adopt it when it was clearly unreasonable, absurd and unjust. If this be the spirit in which we are to view the rule under consideration (that a man shall not be allowed to stultify himself by alleging his mental incapacity in avoidance of his own act,) we shall not be much embarrassed with it, and we may declare that, though it may be the law of England, it is no part of our law." This is the unanimous and clear opinion of the court. To the same effect are the cases of *State* v. *Com'rs of Roads,* 1 *Mills' Const. R.* 55 ; *State* v. *Allen,* 1 *McCord* 525. Why, then, should our courts feel under any obligation to follow a rule which the English courts have tried and abandoned, on the ground that it tended to defeat, rather than carry out, the intention of the testator, and which the English parliament, doubtless on the recommendation of their Lord Chancellor and the judges, repealed and reversed by statute nearly fifty years ago? The rule of the English statute is certainly simpler and more conformable to reason. The rule of reason is, that when a man makes a general devise he means to include all the property he has the power to dispose of, unless there be something in the will to indicate the contrary. In Massachusetts the rule of the English statute is adopted. *Amory* v.

*Meredith,* 7 *Allen* 397.   See, also, *White* v. *Hicks,* 33 *N. Y.* 380.. The rule distinguishing between property and power has not become so firmly established in this state that our courts should feel under obligation to follow and adopt what the English courts have long since abrogated as unjust and unreasonable, and what the American courts are repudiating, either by judicial decision or under the stress of statutory enactment.   4 *Kent* (*12th ed.*) 335, *note.*

In a note to *Blagge* v. *Miles,* 1 *Story* 458, Judge Story says: " All these refined and subtle distinctions in relation to the execution of powers are swept away by statute in England, and the doctrine has settled down in that country to what seems to be *the dictate of common sense,* unaffected by *technical niceties.*" As we are not complicated with any previous decision, and are left free to adopt what shall be considered the most reasonable rule, my conclusion is, that the will of Samuel J. Boyce is a valid execution of the power of appointment vested in him by his father's will in relation to the Merchants' Hotel.   My further conclusion is, that if the Merchants' Hotel passes under the will of Samuel J. Boyce, it passes charged with his debts, and that if it does not pass under his will, it goes to his children under the will of Ker Boyce.   4 *Kent* 340, and cases cited.

To this report the plaintiffs excepted, and the case was heard upon such exceptions.   The decree of the Circuit judge was as follows:

It is well to ascertain the interest which Samuel J. Boyce took under the will of his father, Ker Boyce.   The devise of the Merchants' Hotel was to certain persons, as trustees, to permit his son, Samuel J. Boyce, to take the income for his own use and maintenance during his natural life, and after his decease, to the use of such person or persons as he, by his last will, may appoint. Is this power of disposal a property, or only a naked power? The court will not imply an absolute estate when the interest of the donee is expressly limited to a life estate.   *Pulliam* v. *Byrd,* 2 *Strob. Eq.* 142; *Wilson* v. *Gaines,* 9 *Rich. Eq.* 420.   Where an estate is devised to one for life, with the remainder to such persons as the tenant for life, or any appointor shall direct and

appoint, and in default of such appointment to a person or a class of persons *in esse,* the remainder is vested, notwithstanding the interposition of the power. The estate is vested in the remaindermen, subject to be divested by the execution of the power. *Williman* v. *Holmes,* 4 *Rich. Eq.* 475. It appears from the authorities as the law of England, and of this state, that Samuel J. Boyce had no interest in the property but for life, with a power of appointment by his will. 2 *Crabb's Law of Real Prop.,* § 2060. So that unless his will took effect as an appointment, the Merchants' Hotel could not pass thereby. The questions are, 1st, did he execute his power of appointment? and if so, 2d, did he execute it correctly, or was he in excess as to part? The plaintiffs allege there was no execution of the appointing power. It is stated by the master in his report that there is no reference in the will of Samuel J. Boyce to the power conferred by it, nor to the property mentioned in Ker Boyce's will; and it is further stated that Samuel J. Boyce had other real property on which this will might operate. It may be observed here that there are cases, especially where married women have a testamentary power of appointment, where wills will be intended an execution of the power, though it contains no reference to the power or the instrument creating it. *Churchill* v. *Dibben,* 9 *Sim.* 447; *Heyer* v. *Binger, Hoff.* 2. And the reason is obvious, that as formerly a married woman could not make a will, her will not expressing the power shall be referred to it. *Rose* v. *Eives,* 3 *Atk.* 156. What do the English cases say is a valid execution of a power by wills? Though a will does not state that it is made in execution of the power, yet if it plainly refers to it, and comprises the subject of the power, it will be deemed a good execution. *Weelock* v. *Gill,* 1 *Russ.* 575; *Walker* v. *Mackie,* 4 *Russ.* 76. A testator having a power of appointment over certain freehold and copyhold estates, and being seized of other freehold estates, devises all his freehold and copyhold estates without reference to the power; held an execution of the power as to the copyhold estates, but not as to the freehold estates, which were subject to the power. *Lewis* v. *Lewellyn,* 4 *Russ.* 81. The principle involved in this case was fully considered in the case of Sarah Trymmer's will. The syllabus of the case, as stated in the de-

cision of the Court of Common Pleas, is: "A devisor being seized of a moiety of certain lands in Surrey, having, by her own creation, a power of appointment over the other moiety, which she had purchased of her nephew, who succeeded her sister in the possession of it, and having no other real estate, devised all her freehold estate in Surrey to J. R., on condition that out of the rents and profits he should keep the whole in tenantable repair, and under limitations framed, to keep the property as long in her family as possible. *Held*, that this devise was, under the circumstances, a good execution of the power. *Doe d. Nowell* v. *Roake*, 9 *E. C. L.* 476. The case was carried, by writ of error, to the Court of King's Bench and the judgment reversed. 11 *E. C. L.* 653. And from the King's Bench the case was carried to the house of lords, and the judgment of the King's Bench was affirmed. 19 *E. C. L.* 139.

In the house of lords, Alexander, C. B., said: "My lords, there is no difference of opinion among the judges in this cause." I may venture to say, that in no instance has a power or authority been considered as executed unless by some reference to the power or authority, or to the property which was the subject of it, or unless the provision made by the person entrusted with the power would have been ineffectual. It would be extremely dangerous to depart from these rules in favor of loose speculation respecting intention in the particular case. It is, therefore, that the wisest judges have thought proper to adhere to the rules I have mentioned, in opposition to what they evidently thought the probable intention in the particular case before them. If authorities can settle a principle, these would seem to be sufficient.

So conclusive did they appear to Sir Edward Sugden, that in his work on the Law of Property, he says: "A general devise would not, under the old law, operate as an execution of even an unlimited power of appointment, unless the power or the estate were referred to, or the testator had no other real estate to satisfy the devise." *Sugden's Law of Prop.* 493. But is the present a proper case for the adoption of the principle that a general devise will carry property held only under a power of appointment? The intention of the donor must govern. The will of the devisor,

Ker Boyce, negatives the idea of absolute property vesting in Samuel J. Boyce by the express gift for life, for the use only of the income, the power of appointment to some person or persons precluding the idea of Samuel J. Boyce's appointing to himself, and the gift of the property to others, if no appointment be made. The different uses of the property, and the different modes of enjoyment, are evidence that the testator did not contemplate the entire interest would vest in his son. The appointee takes by authority of the instrument which creates the power, not of the instrument by which it is executed; that is, he takes in the same manner as if his name had been inserted in the power, or as if the power and the instrument executing the power had been incorporated in one instrument, and, consequently, he takes as if all that was in the instrument executing had been expressed in that giving the power. 2 *Crabb*, §§ 2028, 2029. Would it consist with the supposed intention of Ker Boyce to devise property for the payment of his son's creditors, whom he could not know, and by the execution of a power granted by him, divert the property from his grandchildren, whom he did? Would not such a result probably be as much against the intention of the donor of the power as was supposed to be by Sir William Grant in the case of *Jones* v. *Tucker*, 2 *Mer.* 533, where a woman had a power to appoint £100 by her will, and a few articles of furniture; she made her will, bequeathing £100 to plaintiff, which was held an execution of the power. Sir William Grant said that in his private opinion the intention was to give £100, which the testatrix had the power to dispose of, though he could not have judicially declared it executed. 6 *Bing.* 478. But if the will of Samuel J. Boyce be a good execution of the power, shall his appointment be extended so as to include his debts? The power of appointment is to the use of such person or persons as he may, by his last will, appoint. This power is not general; it is limited with respect to persons and its mode of execution. The persons are to be designated by the appointor, not generally for such uses and purposes as the appointor shall declare; but it is to such persons as the appointor may name. Property over which dominion was exercised by virtue of a general power, is considered absolute property as far as to be liable for debts; but if it be a particular

power to appoint for third persons named in the power, and not for the benefit of the donor of the power, the conclusion is different. 4 *Kent* 340. In strictness, how can the creditors of Samuel J. Boyce, not named, come in under a general clause, " I direct that all my just debts be first paid?" How are the debts to be paid; by money? So far from a sale of the " Merchants' Hotel," the will of Ker Boyce intends and declares only the use of the income of the property to his son Samuel for life, and after the use of Samuel, to his appointees, and on failure thereof, then in the same form to his children or their issue. No change of the property is declared. Powers in this state have been construed strictly, and appointments not within their meaning held invalid. Thus, a power in a will to sell such property as may be useless, will not authorize an executor to sell any property as he may choose. *McCants* v. *Bee*, 1 *McC. Ch.* 393. So a power to appoint by will is not executed by a mortgage to creditors with foreclosure and sale. *Bentham* v. *Smith, Cheves' Eq.* 33. In the case of Withers *v.* Yeadon, a power was given by the will of John Wagner to his son, George Wagner, to give property by his last will and testament to a child or children, or any of them. George Wagner, by his will, attempted to execute this power by giving all the property to his wife, and also delegated his power of appointment to his wife, and son, John Wagner. The court held that no appointment was made, because the children being designated, no appointment could be made to the wife, and that although the property was given to him in terms which would imply ownership, yet there being a power of appointment, and children answering the description of appointees, the appointment should have been made. The result was the court held George Wagner made no appointment, and that all the children of John Wagner were entitled to the slaves given, and realty devised to George Wagner. 1 *Rich. Eq.* 324.

The court finds as facts, 1st. That Ker Boyce, now deceased, made his will as stated in the pleadings. 2d. Samuel J. Boyce, now deceased, made his will as stated in the pleadings. 3d. That Mary Lane Bilderback, now deceased, made her will as stated in the pleadings. And conclusions of law, 1st. That the will of Samuel J. Boyce is not a valid execution of the power under

the will of Ker Boyce.    2d.  That if the will of Samuel J. Boyce be a valid execution of the power as to the devisees, it cannot appoint for payment of Samuel J. Boyce's debts, and that no such appointment is made.    3d.  That the children of Samuel J. Boyce are the tenants in fee of the Merchants' Hotel, under the will of Ker Boyce.

It is ordered, adjudged and decreed that the exceptions of the plaintiffs be sustained.   The conclusions of law of the master are overruled, wherein they differ from the conclusions of the court, as above declared.

James P. Boyce, trustee, appealed.

*Mr. George S. Holmes,* for appellant.

*Messrs. Lord & Inglesby,* contra.

March 8th, 1881.   The opinion of the court was delivered by

McGOWAN, A. J.   The late Ker Boyce departed this life in 1872, leaving a will whereby he devised the hotel in the city of Charleston, known as the "Merchants' Hotel," to James P. Boyce, J. B. O'Neall, A. G. Rose and J. A. Whitesides, executors, *in trust,* to permit his son, Samuel J. Boyce, to take the income for his own use and maintenance during his natural life, and after his decease to the use of such person or persons as he, by his last will, might appoint, and in failure of such appointment, to his children or their issue then living, &c.   James P. Boyce, alone, accepted the trust, and, soon after the death of the testator, took possession of the premises, collected the rents and paid over the same to the said Samuel J. Boyce.

Samuel J. Boyce died in 1877, leaving surviving him his two sons, James Spann Boyce and Latimer Boyce, and a daughter, Mary Lane, wife of Joseph A. Bilderback, who died after the death of her father, Samuel J., leaving a will, by which she devised her interest in the said hotel to her husband, J. A. Bilderback.

Samuel J. Boyce left a will, by which he provided as follows : 1. "I direct that all my just debts be first paid."   2. "I give

and bequeath one moiety of all the rest and residue of my estate whatever and wherever to my beloved wife, Mary E. Boyce, to and for her absolute use and behoof forever." 3. " I give, bequeath and devise the other moiety of all the rest and residue of my estate, whatever and wherever, to my brother, James P. Boyce, to hold *in trust* for my children, Mary Lane Bilderback, wife of Rev. J. A. Bilderback, Latimer Boyce and James Spann Boyce," upon the terms and conditions therein expressed.

This was a proceeding for possession of the said hotel, instituted by the children of Samuel J. Boyce against James P. Boyce, as trustee, and Mary E. Boyce, widow of Samuel J. Boyce, alleging that the power of appointment given to their father, Samuel J., was never executed, and that his interest for life having ended, they are entitled to the said premises as remaindermen under the will of their grandfather, Ker Boyce. The defendants resist the claim, alleging that the will of Samuel J. Boyce, although in general terms, without any reference to the power, *was a good execution* of the power, and that the hotel, in common with his own property, passed under it for the purposes therein declared, and, among others, for the payment of his debts.

It was referred to Master Porter to hear and determine the issue, and he held " that the will of Samuel J. Boyce is a valid execution of the power of appointment vested in him by his father's will in relation to the Merchants' Hotel. That if the Merchants' Hotel passes under the will of Samuel J. Boyce, it passes charged with his debts, and that if it does not pass under his will it goes to his children under the will of Ker Boyce." The plaintiffs filed exceptions, which were argued before Judge Thomson, who sustained the exceptions, and decided that the will of Samuel J. Boyce was *not* a valid execution of the power under the will of Ker Boyce, and that the children of Samuel J. Boyce are tenants in fee of the Merchants' Hotel under the will of Ker Boyce. To this decree the defendants filed exceptions, and the appeal comes to this court.

The question made has often been before the courts in England and in most of the states of the Union, but it is said that it is now presented for the first time in this state. The precise point is whether a mere power to declare by will uses in a lot of land

is duly executed by a will in general terms disposing of the whole estate of the donee of the power without any reference in terms to the power or the property and where the donee's own property satisfies the terms of the will.

All the authorities agree that this is a question of intention. Samuel J. Boyce had the power to appoint by will. He made a will disposing of his whole estate. Did he intend thereby to execute the power as to the hotel? Intention is a matter of fact and must be reached through the will itself. In order to facilitate the inquiry as to the intention in such cases, the Court of Chancery in England, after much division and many efforts, at length settled certain rules to be followed. Without going into the learning involved or attempting to review the numerous cases upon the subject, we content ourselves with a reference to those rules as stated in the case cited in the decree, of *Doe d. Nowell* v. *Roake,* 9 *E. C. L.* 497, which was carried by writ of error to the King's Bench, (11 *E. C. L.* 653; 5 *B. & C.* 720); and from the King's Bench to the House of Lords, where the judgment of the King's Bench was affirmed. 19 *E. C. L.* 139. In that case it was solemnly decided that the court would infer an intent to execute a power only in three cases. *First,* where there was some reference in the will or other instrument to the power. *Second,* or reference to the property which is the subject on which it is to be executed. *Third,* or where the provision in the will would have no operation except as an execution of the power. According to this canon of interpretation, the power in this case was clearly not executed. The Merchants' Hotel is not mentioned in the will of Samuel J. Boyce, nor is the power referred to, and the terms are satisfied by the property which he left, without including that as to which the power existed.

But it is strongly urged upon the court that as the point involved is now for the first time to be decided in South Carolina, we are not complicated by previous decisions, and are at liberty to make a rule of our own—that the old rule of the English chancery should not be followed by us, for the reason that in its operation there it was not entirely satisfactory, resulting often in defeating instead of carrying out the intention. It is true that some eminent English judges have expressed themselves to that

effect, and for this or some other reason laws have been passed in England which declare " that a general devise of real or personal estate in wills should operate as an execution of a power of appointment of the testator over the same, unless a contrary intent should appear in the will." 7 *Wm. IV.;* 1 *Vict.,* c. 26, § 27. These statutes are certainly not of force as law in this state, but the principles and practice of the old English chancery, announced and followed by the great masters of equity, Somers, Hardwicke, Eldon and others, have been generally regarded with the greatest respect and as the highest authority, if not absolutely binding upon us. The Court of Chancery was originally established in South Carolina while a province of Great Britain, in 1721, and was " empowered to have and exercise the same jurisdiction in hearing, adjudging and determining all causes and suits in equity in as full and ample a manner as any Chancellor, Court or Courts of Chancery in America can, may or ought to do." While the rigid enforcement of the rule of construction before referred to may have, in some instances, run counter to the actual intention, which sometimes happens in the application of other rules for the construction of wills, we do not appreciate the objection to the full extent urged. Upon such a subject it is necessary to have rules, otherwise we should be absolutely at sea. The execution of a power is not an ordinary matter, but is out of the usual course of things. It is incumbent upon the donee of the power to do the act ; if not done, certain consequences of importance follow ; and it would seem to be in accordance with the analogies of the law, that those who claim under the appointment should be held to show satisfactorily that it was made. In a large majority of cases testators dispose only of their own estate. These wills, which embrace also the execution of powers, are exceptions to the rule. When, therefore, a testator having property leaves a will, disposing of it in the usual manner, without any reference to a power, the inference, in the absence of other proof, is that the will is not one of the exceptions, but, as it purports, disposes only of the estate proper of the testator. If the will were intended to refer to and accomplish a matter so remarkable as the execution of a power, the part intended to make the appointment would naturally be separate

and distinct from the other parts. "Every instrument executing a power should mention the estate or interest disposed of; and it is best to declare it to be made in exercise of the power, and the formalities required in the execution of the power must appear on the face of the instrument." 4 *Kent* 329.

In most of the states of the Union which have no legislative enactments on the subject, there has been, as we understand it, a general acceptance, with some modifications, of the rule followed in the English chancery. These modifications, for the most part, are upon the point of allowing proof of the circumstances under which the will was executed, so as to allow it to be read in the light of those circumstances. The cases are not in accord, and we will not encumber this opinion by referring to them. If there can be said to be a distinct American doctrine upon the subject, we do not know that it is anywhere better stated than by Judge Story in *Blagge* v. *Miles*, 1 *Story* 426, cited in a note to 2 *Eq. Jur.*, § 1062. In that case the rule of construction before referred to was stated, and the judge, in commenting, says: "The authorities on this subject may not all be easily reconcilable with each other, but the principle furnished by them, however occasionally misapplied, is never departed from, that if the donee of the power intends to execute the power, that intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative. I agree that the intention to execute the power must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation. If it is doubtful under all the circumstances, then that doubt will prevent it from being deemed an execution of the power."

We are content to take this as the result of all the American authorities, which declares that the intention to execute must be *apparent and clear, so that the transaction is not fairly susceptible of any other interpretation.* Taking this as our guide, did Samuel J. Boyce intend, by his will, to execute the power in reference to the Merchants' Hotel? His will makes no reference to the power or the property—it contains no expressions such as are usually employed in executing powers, but only the words of ordinary disposition, providing first for the payment of debts,

&c. The testator had property of his own which fully satisfied the terms of the will, which, from anything that appears on its face, might have been prepared by one who had no knowledge of the power or the existence of the hotel. Before deciding the question whether the property as to which the power existed, passed under the will of Samuel J. Boyce as part of his own estate, it is proper to inquire what the power of appointment was—whether it was part of his " estate " in such sense as under that description alone it would pass under the will. Samuel J. Boyce never had any *estate* in the Merchants' Hotel. It belonged to his father, who gave it to trustees " to permit his son, Samuel J., to take the income for his own use *during his natural life,* with power of appointment, and in failure of such appointment, to his children." The remaindermen *in esse* under the will of Ker Boyce took a vested interest, subject to be divested by the execution of the power. *Williman* v. *Holmes,* 4 *Rich. Eq.* 476. The power could be executed only *by will,* which took effect at the death of Samuel J., when his interest even in the income ended; so that at the time the will took effect the testator had no property interest whatever in the hotel. We do not agree that the distinction taken between *property* and *power* is a distinction entirely without a difference. This case affords a good example of a naked power as distinguished from property. " The distinction, although nice, is completely established between a gift to one indefinitely, with a general power of appointment superadded, and a gift to one *for life* with like power of appointment. In the former case the estate passes absolutely to the donee, and in the latter case an estate only for life to the donee with the power of appointing the inheritance or succession, which must be exercised to be effectual." *Scott* v. *Burt,* 9 *Rich. Eq.* 360; *Aaron* v. *Beck, Id.* 412; *Wilson* v. *Gaines, Id.* 421; *Pulliam* v. *Byrd,* 2 *Strob. Eq.* 141; *Bradly* v. *Westcott,* 13 *Ves.* 445.

In the case before us, not only was the gift to trustees definite, being *for life,* but the power of appointment was limited *to will.* The donee could not appoint to his own use.

The words in the residuary clause are very comprehensive, " whatever and wherever," but they do not reach to the hotel, for

the reason that they refer, in terms to the testator's "estate." The expression "all the rest and residue of my estate, of every nature and kind," in Blagge *v.* Miles, was said to be incapable of passing property over which testator had only a power. "These words mean that the testator does not intend to die intestate as to any part of his estate, and they generally mean nothing more." *Lupton* v. *Lupton,* 2 *Johns. Ch.* 623.

Looking at the terms of the will and all the surrounding circumstances, it does not appear that the intention of Samuel J. Boyce to execute the power under his father's will is "apparent and clear," and we think the transaction is fairly susceptible of the interpretation that he meant to dispose of his own estate and not to execute the power as to the Merchants' Hotel.

As this court takes the view that the power under the will of Ker Boyce was not executed by the will of Samuel J. Boyce so as to dispose of the hotel, it will not be necessary to consider what would have been the result as to the payment of the debts of Samuel J. Boyce under the first clause of his will if the power had been well executed.

The judgment of the Circuit Court is affirmed and the appeal dismissed.

Simpson, C. J., and McIver, A. J., concurred.