VICTOR JEROME HOYT et al., Respondents, *v.* ANSON B. HOYT et al., Appellants.

Legacies may be charged upon real estate without express direction, if the intention of the testator so to do can be fairly gathered from all the provisions of the will; and extraneous circumstances may be considered in aid of the terms of the will.

The will of H. directed, first, the payment of all his just debts; second, it gave legacies of $1,500 each to three grandchildren who were under age, payable when they became of age respectively; third, it gave the "rest, residue and remainder" of his estate, real and personal, to his wife for life, after her death a part of the real estate to a daughter for life and a part of the personalty absolutely, and then gave "the rest, residue and remainder" of his estate to four of his children, share and share alike. At the time of the execution of the will the testator owned a second mortgage, the value of which was more than sufficient to pay the debts, which were merely nominal, and the specific legacies. Six years after the execution of the will and just prior to the death of the testator, he executed a codicil, which in terms was declared to be part of the will, which gave to the widow power to sell any or all of the real estate subject to the approval of the "heirs" of the testator living at the time of sale. At the time of the execution of the codicil, two of the grandchildren were of age and the other nearly so, the mortgage was then worthless and the testator's other personal property was worth only about $200.

In an action to charge the legacies upon the real estate, *held*, that the natural inference was that the power of sale was given to raise money as well for the payment of the legacies as the support of the widow, and that it was the intention of the testator that the legacies should be paid at all events; and so that the real estate should be liable for such payment.

(Submitted March 21, 1881 ; decided April 19, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made February 11, 1879, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term. (Reported below, 17 Hun, 192.)

This action was brought by plaintiffs as legatees under the will of their grandfather Belding Hoyt, among other things to have the legacies charged upon the real estate of which the testator died seized. The will was executed August 6, 1868. The clauses of it in question are as follows :

" *First.* I order and direct that all my just debts be paid.

" *Second.* I give and devise to my grandchildren Jerome Hoyt, Montraville Hoyt and Peter Van Schruyver Hoyt, children of my son William, the sum of one thousand five hundred dollars each, to be paid to them upon arriving at the age of twenty-one years respectively.

" In case of the death of any or either of my said grandchildren Jerome, Montraville or Peter Van Schruyver before having received the said sum of money, then the said portion or portions shall be divided equally among my children Noah B., Anson B., George W. and Emeline Adelia, share and share alike.

" *Third.* I give and devise all the rest, residue and remainder of my real and personal estate to my beloved wife Rebecca, to be used and enjoyed by her during the term of her natural life, and from and immediately after her decease, I give and devise the same as follows : to my daughter Emeline Adelia the homestead property, * * * to be used and enjoyed by her during the term of her natural life, and from and immediately after her decease to be divided equally among my

children Anson B. Hoyt, Noah B. Hoyt and George W. Hoyt, share and share alike; and also I give and bequeath to my said daughter Emeline Adelia all of my household furniture, and the rest, residue and remainder of my real and personal estate shall be divided equally among my children, Anson B. Hoyt, Noah B. Hoyt, George W. Hoyt and Emeline Adelia Hoyt, share and share alike.

"In case of the death of any or either of my said children, Anson B., Noah B., George W. or Emeline Adelia, before having received the property to which by the provisions of this will they would have been entitled, without leaving issue him, her or them surviving, then the said portion or portions shall be divided equally among the survivors of him, her or them, share and share alike. And if any or either of my said children should die as aforesaid, leaving lawful issue him, her or them surviving, then the children of him, her or them shall be entitled to receive the parent's share, and the same shall be divided equally among them."

On June 11, 1874, just prior to the death of the testator, he executed a codicil, the body of which is as follows:

"Whereas, I, Belding Hoyt, of the city (formerly town) of Yonkers, county of Westchester, and State of New York, have made my last will and testament, bearing date the sixth day of August, in the year of our Lord one thousand eight hundred and sixty-eight: Now, therefore, I do, by this my writing, which I hereby declare to be a codicil to my said last will and testament, and to be taken as a part thereof, order and declare that my will is: that my said wife Rebecca may, at any time during her life-time, sell and dispose of any or all of my real estate, giving and granting unto my said wife full power and authority to execute and deliver to the purchaser or purchasers thereof the proper instruments in writing for the conveyance of the same in law; provided, nevertheless, and upon the express condition that such sale or sales shall be subject to the approval of each and every of the heirs of my said estate surviving at the time of such sale or sales as aforesaid."

The further material facts appear in the opinion.

*R. W. Van Pelt* for appellants. When extrinsic circumstances are to be resorted to in order to aid in giving construction, they are to have reference to such circumstances as existed at the date of making the will, and not to those posterior or to such as may exist at the time of construing it. (1 Jarman, 365; *Myers* v. *Eddy*, 47 Barb. 263.) From the whole structure of the will, the testator did not intend to make, and did not make the legacies in question a charge upon the land, and it is, therefore, unnecessary to resort to technical rules for its construction. (*Bevan* v. *Cooper*, 72 N. Y. 317; 2 Redf. on Wills [2d ed.], 209.) The usual residuary clause is mere formula, and, therefore, no intent can be inferred from that clause unsupported by other clauses showing such intent. (*Myers* v. *Eddy*, 47 Barb. 263; *Lupton* v. *Lupton*, 2 Johns. Ch. 614.) If a testator gives a legacy, without specifying who shall pay it, or out of what fund it shall be paid, it is presumed to be payable out of personal estate; and if that fails, the legacy fails. (*Harris* v. *Fly*, 7 Paige, 721.) No person but an aggrieved party can impeach a deed on the ground of fraud. (Story's Eq. Jur., § 203; *Hungerford* v. *Easton*, 20 Johns. 478.)

*S. P. Nash* for respondents. The parties who devised and carried out the scheme of procuring plaintiffs' execution of the deeds, being tenants in common of the property on which the legacies were a charge, and two of them executors of the will, stood in a fiduciary relation to the plaintiffs, which invalidated the entire transaction. (*Knolls* v. *Barnhart*, 71 N. Y. 474; *Dickinson* v. *Cadwell*, 1 Sandf. Ch. 214; *Van Horne* v. *Fonda*, 5 Johns. Ch. 388.) Where the real estate and the personal estate are, by the residuary clause, blended in one fund in terms importing that the testator looked upon it as one mass, for the purpose of disposition, the legacies are thereby charged upon the realty. (*Bevan* v. *Cooper*, 72 N. Y. 317, 323; *Shulters* v. *Johnson*, 38 Barb. 80; *Reynolds* v. *Reynolds*, 16 N. Y. 257; *Greville* v. *Browne*, 7 H. of L. 689; *In re Bellis' Trusts*, L. R., 5 Ch. Div. 504; *Bray* v. *Stevens*, L.

R., 2 Ch. Div. 162; *Forster* v. *Cirvill,* 20 Hun, 282.) Where there is no express charge of the legacies upon the real estate, the intent to so charge them may be gathered from the general provisions assisted by the extraneous circumstances of the case. (*Taylor* v. *Dodd,* 58 N. Y. 335, 348, 349.) Assuming that it might have been considered doubtful whether the real estate was in fact charged with the legacies, the acts of the other heirs made their interests liable for it. (*Craus* v. *Hunter,* 28 N. Y. 389.)

FOLGER, Ch. J. This is a suit seeking a judgment that the legacies given by the second clause of the will of Belding Hoyt are a charge upon the real estate devised thereby. It is but to utter common knowledge, to say that legacies of money are to be paid from personal property, and that, if the personal estate is insufficient therefor, the legacies are to abate, unless the real estate is charged with the payment of them. There is no express direction in this will that these legacies be charged upon the real estate. Yet legacies may be charged upon real estate without express direction in the will, if the intention of the testator so to do can be fairly gathered from all the provisions of the will; and extraneous circumstances may be considered in aid of the terms of the will. The will in this case is lean of the clauses and expressions that have been mainly rested upon in the earlier adjudications of this State as showing that intention. It does not direct the legacies to "be first paid," and then devise the real estate; it does not devise the real estate, nor the remainder of the real and personal estate, "after the payment of the legacies"; it does not devise the real estate to a person in his own right, or as executor, and expressly direct him to pay the legacies. It does not make a residuary devise of "all not herein otherwise disposed of." These several forms of expression have been held to indicate an intention in the testator to charge the payment of the legacies upon the real estate devised. None of them are here. Nor are there some things here that have been held, when present, to exclude the inference of an intention to

charge legacies.   It is conceded that the debts of the testator were but nominal ; so the provision for the payment of debts would not have raised in his mind the idea of a rest and residue of his estate after somewhat had been taken therefrom to satisfy them.   There was no prior devise of specific real estate; so that it being taken away there would be left a rest and residue of that kind of property for the devise of the residue to apply to.   There is no distinction in the gift of the rest and residue, between real and personal, but all the rest and residue of both kinds is given as one in the first disposition of it. There is nothing in the natural relations of the particular legatees to the testator and to the other legatees and devisees that would indicate less desire on his part that the former should be as sure as the latter of enjoying the bounty to them. None are strangers in blood.   All could claim kindred there and have their claim allowed.   There are but three things in this will that have any kin to what has been held to show that intention.

*First.*  It is assumed that no man, in making a final disposition of his estate, will make a legacy, save with the honest, sober-minded intention that it shall be paid.   Hence, when from the provisions of a will prior to the gift of legacies it is seen that the testator must have known that he had already so far disposed of his personal estate as that there would not be enough left to pay the legacies, it is reasoned that the bare fact of giving a legacy indicates an intention that it shall be met from real estate.   So it was reasoned in *Goddard* v. *Pomeroy* (36 Barb. 546-56).   Courts have been urged to go a step further, and to say, that when the facts of the estate, *aliunde* the will, show that the testator must have known that if a legacy was to be paid only from personal estate, it would be a barren gift, he must have intended to subject the real estate to a liability for it.   Were the legacies here to strangers in blood, it would need a strong case, showing beyond doubt, that the testator was aware when he made the bequests that his personal estate would fail to satisfy the gifts made by him, to warrant the judicial inference of an intention to put a charge therefor

upon real estate. We were so urged in *Bevan* v. *Cooper* (72 N. Y. 317, 322), but could not yield to it. In the case in hand, the will was made in 1868, and gave $4,500 in legacies. At that time, it is inferable from the case that the testator had $9,000 in money or choses in action. He had that sum at the time of his death in a mortgage on real estate of a son. It is also inferable that, at the ·time of making of the will, that mortgage would have been by business men esteemed collectible. Thus one of the facts was not in the case when the will was made, needful to construct the proposition we are considering. When the codicil was made, six years after the will, and on the eve of the decease of the testator, it is probable·that values of real estate had shrunk so much that the mortgage was worthless; as it proved to be not long after, when a prior mortgage was foreclosed, and the testator's mortgage was left unpaid, and worthless; and his personal estate at his decease, except his household stuff, was not over $200 in value. Now the codicil is in terms declared to be a part of the will, and the will is thereby in effect republished, and is thus republished in that changed state of the testator's pecuniary affairs. It is not directly shown that the testator knew of the worthlessness of that mortgage and the poverty of his personal estate when he made the codicil. But it is inferable, from the contents of the codicil and the circumstances about the testator at that time. Not a strong circumstance at best; it is too uncertain, considered alone, to give reasonable ground for inferring that the testator meant that the legacies should be charged upon the real estate. But there is an aspect of this matter that will properly be presented here, and which makes more significant the lack of assets. It is sometimes held, that where the only provision for a younger child is a legacy, that fact is of great weight, in determining that it was the testator's intent to make it payable at all events, and so out of the realty if ˙the personalty is not enough. (Roper on Legacies, chap. 12, § 2, p. 454, subd. 2.) And the case of a grandchild is the same. ( *Van Winkle* v. *Van Houten,* 2 Green's Ch. [N. J.] 187.) The distinction is between a legacy to a stranger, which is a mere bounty, and a legacy that

is the only provision for one of the blood of the testator who
has a claim to recognition and provision. (See *Uvedale* v.
*Halfpenny*, 2 P. Wms. 153.) In such case courts go a great
way in order to carry out the provisions of a will, founding
the intention to make all parts of the estate liable upon the
presumption of the strong desire and purpose that must have
existed, that one natural object of testamentary bounty should
not receive and another go away empty. In one case it is said
that this fact alone is enough to turn the scale, where the pro-
visions of the will are otherwise dubious. (*Moore* v. *Beckwith*,
*infra*.)

*Second.* It is a rule in England, that if legacies are given
generally, and the residue of the real and personal estate is
afterward given in one mass, the legacies are a charge on the
residuary real as well as the personal estate (*Greville* v.
*Browne*, 7 H. of L. Cas. 689 in 1859, where it is said by Lord
Campbell to have been a well-settled and useful rule of prop-
erty for a century and a half; *Wheeler* v. *Howell*, 3 K. & J.
198; *Gyett* v. *Williams*, 2 J. & H. 429)); and that such is
the rule in that country has been recognized as late as 1877
(*In re Bellis's Trusts*, L. R., 5 Ch. Div. 504); and in 1879
(*Bray* v. *Stevens*, L. R., 12 Ch. Div. 162). Such is the rule
in some of the States of the Union, and in the Federal Su-
preme Court. (*Hays* v. *Jackson*, 6 Mass. 149; *Wilcox* v. *Wil-
cox*, 13 Allen, 252; *Gallagher's Appeal*, 48 Penn. St. 122; *Rob-
inson* v. *McIver*, 63 N. C. 649; *Moore* v. *Beckwith*, 14 Ohio
St. 135; *Lewis* v. *Darling*, 16 How. [U. S.] 1.) We were
urged to adopt this rule in deciding *Bevan* v. *Cooper* (*supra*);
but, while we did not undertake to question the soundness of
the reasoning in the decisions there cited, we had in mind the
remarks of the chancellor in *Lupton* v. *Lupton* (2 Johns. Ch.
623), and of Potter, J., in *Myers* v. *Eddy* (47 Barb. 263);
and as we could dispose of the case then without adopting or
rejecting the rule, we did neither. Nor is it needed in the case
in hand that we adopt the close rule above given, or question the
correctness of *Lupton* v. *Lupton* and *Myers* v. *Eddy*. As we
understand them, they assert that, unaided and alone, the

words that make up the usual residuary clause of a will are not enough to evince an intention in the testator to charge a general legacy upon real estate. The devise here of the rest and residue is not such. When we read the clause, we see that it first gives the rest, residue and remainder of the real and personal estate to his widow for life ; it gives, after the death of the widow, a part of the real estate of that rest and residue and remainder to a daughter for life, and a part of the personal estate thereof to the daughter absolutely ; and then gives the rest, residue and remainder (using the same phraseology again), not so given to the daughter, to four children, share and share alike. Now, there can be no question but that when he last used that phraseology he had defined in mind an actual residue that would remain after there had been parts of his estate set aside to his daughter, some for life and some in absolute right. We may well say that if those terms were used by him then, with that actual and distinct meaning, they had when used just before the same meaning; that in each case he meant by them to give that which was left after something which was before given had been taken out. The repetition of the terms with such a necessary practical application gives them a vigor and force wherever they occur in the will, which they might not have otherwise had. And, as in the last use of them, they of necessity signify that which has been left, when something that has been before named and given has been set apart, so they must, in the first use of them, signify the same. And as at the first use of them, the legacies to the grandchildren were substantially the whole of what was to be taken out, as the debts were but nominal, what was given by that use of the terms, whether it was real estate or personalty, was that residue thereof that would be left after the legacies had been paid. So that, in this case, we think that what we may term the residuary clause of the will is more significant of purpose than it was held to be in *Lupton* v. *Lupton* and *Myers* v. *Eddy*.

*Third.* The codicil contains a power of sale of the real estate. The power is given to the testator's widow. It is not

to be exercised, however, save with the approval of each and
every of the heirs of the testator's real estate. If the word
" heirs," there, means either those who would have taken that
real estate by descent had there been no valid will, or if it
means those who were interested in his whole estate, by reason
of the provisions of the will, then it includes the grandchil-
dren, the legatees. It is not to be conceived why the testator
should have made their approval needful, unless he looked
upon them as interested in the disposition of the real estate ;
nor why he looked upon them as interested in it, unless it was
to be the ultimate resort for the satisfaction of their legacies.
This provision of the codicil in this view would be a strong
inherent indication of the testator's intention that the lands
should be charged with the payment of the legacies. It is
contended by the appellants that the word " heirs " was not
used by the testator in either of these senses, but as designat-
ing those who by the terms of the will took the real estate
after the decease of the tenants for life ; that is to say, those
who by the will would have an interest in the manner in which
the real estate was to be disposed of under the power of sale.
But this is to beg the question, which is, Who are those who
by the provisions of the will are thus interested ? If the in-
tention of the testator was to charge the legacies upon his
lands, then the legatees are interested in the sale of them. It
is well, therefore, to inquire : What was the purpose of ·the
codicil, the sole primary effect of which was to give to the
widow a power of sale ? That purpose was not in the testator's
mind when he made his will. For he had by that carved two
life estates out of it, before it all came to any one in fee and
with power of absolute disposition. It is reasonable to sup-
pose that something, which occurred after the making of the
will and before or about the time of making the codicil, led
the testator to give that power. . The only thing that appears
from the case to have come into his affairs to work that effect
was the failure of his personal estate. When he made his will
that, as we have seen, he could have reckoned at $9,000. When
he made the codicil, the mortgage that stood for that $9,000 was

worthless; and his personal estate other than that was household stuff and not to exceed $200 of other assets. To our view, *a posteriori*, there were but two things for which he would have needed to have changed his purpose, and to have made the codicil giving a power of sale. It was not to pay debts, for they, as is conceded, were but nominal. It was either that the widow might have the means of support, or it was to pay the moneyed legacies, or it was for both. The appellants, in their points, assume that it was to sell for her use; but there is nothing in the terms of the codicil that so indicates. Gathering the cause from the testamentary instruments, aided by the extraneous circumstances in the case, it was that money was needed where there was none. And gathering the purpose in the same way, it was that there might be money from which to supply the needs of the widow, and with which to pay the legacies. That the latter pressed upon the testator's attention we cannot but perceive. In 1868, when the will was made, the legatees were under age, and the legacies were made payable when the legatees reached twenty-one years of age. When the codicil was made two of them had reached that age, and another was near it. So that on the decease of the testator there would soon be need of money for the payment of the legacies. We must assume that the codicil was made in view of the provision in the will for these legacies, of the lack of personal property to pay them, of the fact that from nowhere but the real estate could money be got for the purposes of the estate, and that by the terms of the will and operation of law they would become payable soon after the death of the testator. It is a natural inference that the power of sale was given as well to raise money for the needs of the estate in the payment of legacies, as for the support of the widow. And if this was in the mind of the testator in making the codicil, it is as fair to interpret the word "heirs," if it was used by him out of its technical sense, as meaning all those interested in any way in his estate, as meaning any of them. It is so, then, that this power of sale thus given and thus worded is of much significance in getting at the intention of the testator. And we can

but draw from it, that it was his purpose that these legacies should be met by money obtained from a sale of some or all of the lands. We think that these considerations fairly lead to the conclusion that it was the intention of the testator that these legacies should be paid at all events, and that all parts of his estate should be liable for the payment.

This is the only question in the case that seems to require our investigation. It is certain that it is needful that the real estate be converted into money, and the matter of a proper disposition of that money will be settled amicably, or by the order of the court below.

All concur.

Judgment affirmed.