In the Matter of the Judicial Settlement of the Account of JOHN F. JAMES and Another, as Executors, etc., of MARY ANN HARVEY, Deceased.

*Term " heir " defined — testatrix not presumed to make bequests which cannot be paid — whole estate presumed to be liable for the payment of legacies.*

In strictness of legal nomenclature the term "heir," where the common law prevails, signifies one upon whom the law casts his ancestor's estate immediately upon the ancestor's death, but, in common parlance, the term "heir" is employed to denote the person who acquires or may receive property, either personal or real, by right of blood relationship.

A deliberate intention of making bequests, which she knew could never be paid out of her estate, cannot be imputed to a testatrix.

Where the legatees named in a will are relatives of the testatrix the court will presume the existence of a desire on the part of the testatrix that all parts of her estate shall be made liable for the payment of such legacies.

By the last will and testament of a testatrix a number of legacies were disposed of amounting in the aggregate to the sum of $4,000. The will then contained the following provision : "I have two thousand four hundred dollars in the Metropolitan Gas Light Company, Brooklyn ; one thousand dollars to go to my niece, Lizzie Lawback, of New York, and one thousand dollars to her sister, Mary Ann Kearns, of Chicago, Illinois. Four hundred dollars to their brother, John A. McDonald. If my husband survives me these legacies are to be paid after his death, he having the interest during his life. My husband, James Harvey, shall also have the use of the house we now occupy in Lafayette avenue, Fort Hamilton, during his lifetime; if not wishing to occupy it, can sell it if he finds it advantageous to do so, but it shall not be rented; if sold, the money to be put to interest, the principal to go to my heirs at his death."

Executors were nominated thereby; former wills were revoked, and the executors were authorized "to sell and dispose of all or any part of my real estate if they shall deem it best for the interest of my estate."

The only personal property left by the testatrix was stock in the Metropolitan Gas Light Company of the par value of $2,400, and a watch and chain. The

only other property she had was the house and lot referred to in the will, which was sold by the executors for $4,000.

*Held,* that the intention of the testatrix was that the legacies should be paid out of the proceeds of the sale of the house, and the residue, if any, should go to the heirs;

That the legacies were a charge upon the land, and the testatrix had given away by her will all the property she possessed.

APPEAL by Francis M. Potter, one of the executors, etc., of James Harvey, deceased, from a decree of the Surrogate's Court of the county of Kings, entered in the office of the clerk of the Kings County Surrogate's Court on the 12th day of March, 1894, judicially settling and allowing the accounts of the executors of Mary Ann Harvey, deceased, and directing the distribution of the said estate.

*William G. Wilson,* for Francis M. Potter, executor of James Harvey, deceased, appellant.

*B. S. Morehouse,* for executors of Mary Ann Harvey, deceased, respondents.

DYKMAN, J.:

This is an appeal from the decree of the surrogate of Kings county directing the distribution of the estate of Mary Ann Harvey, deceased.

By the last will and testament of the testatrix she first gives to nine persons legacies amounting in the aggregate to the sum of $4,000.

Then follow these provisions: " I have two thousand four hundred dollars in the Metropolitan Gas Light Company, Brooklyn; one thousand dollars to go to my niece, Lizzie Lawback, of New York, and one thousand dollars to her sister, Mary Ann Kearns, of Chicago, Illinois. Four hundred dollars to their brother, John A. McDonald.

" If my husband survives me these legacies are to be paid after his death, he having the interest during his life. My husband, James Harvey, shall also have the use of the house we now occupy in Lafayette avenue, Fort Hamilton, during his lifetime; if not wishing to occupy it, can sell it if he finds it advantageous to do so, but it shall not be rented; if sold, the money to be put to interest, the principal to go to my heirs at his death.

" I hereby nominate, constitute and appoint John F. James and James Campbell of the city of Brooklyn, executors of this my last will and testament, hereby revoking all former or other will or wills by me at any time heretofore made, and I do hereby authorize and empower my said executors to sell and dispose of all or any part of my real estate, if they shall deem it best for the interest of my estate, and to execute, acknowledge and deliver all proper deed or deeds for conveyance of same.

" In witness whereof, I have hereunto set my hand and seal this 29th day of December, one thousand eight hundred and eighty-eight."

The only personal property which the testatrix left was the stock of the Metropolitan Gas Light Company, of the par value of $2,400, and the watch and chain. She had no other property except the house and lot, referred to in the will, and that has been sold by the executors for $4,000 under the power of sale contained in the will.

As, therefore, the gas stock and the watch and chain were specifically bequeathed, there remains no fund for the payment of the nine legacies except the proceeds of the sale of the real property, which is just sufficient for their payment.

We have, therefore, to determine whether the $4,000 of legacies is to be paid out of the proceeds of the realty or remain unpaid, and that fund be distributed among the heirs at law of the deceased.

The portion of the will invoked in the contention for the distribution to the heirs is the clause which defers the payment of the legacies until the death of the husband, gives the interest thereon to him during his life, gives him the use of the house during his life, and closes thus : " If not wishing to occupy it, can sell it if he finds it advantageous to do so, but it shall not be rented ; if sold, the money to be put to interest, the principal to go to my heirs at his death."

This last clause is quite inartificial and inconsistent with the previous and subsequent provisions of the will. For instance, it would seem to confer upon the husband a power to sell the house, when in a subsequent clause the will confers a full and valid power of sale of the real estate upon the executors.

So in respect to the statement that the principal arising from the house shall go to the heirs of the testatrix after the death of her

husband, if that clause is to be construed literally and technically, then the general legacies will all remain unpaid.

As this is the only place and time that the term "heirs" is used, it will be well to ascertain the sense in which it is employed.

In strictness of legal nomenclature the term "heir" in this country and in England, where the common law prevails, signifies one upon whom the law casts his ancestor's estate immediately upon the ancestor's death. Under the civil law, however, there were two sorts of heirs, called, respectively, testamentary heirs and heirs at law. (Domat's Civil Law, p. 2, book 1, tit. 1, § 1, art. 2.)

In common parlance and ordinary phrase the term "heir" is often employed to denote a person who acquires or may receive property, either personal or real, by right of blood relation.

What did the testatrix mean by the use of the term here? Did she intend to designate her heirs at law as the recipients of the fund arising from the sale of her house, to the exclusion of her relatives, to whom she had given legacies, or did she use that word to emphasize her design that the latter class should not take their legacies until after the death of her husband, and then the principal should go to them?

If we assume the former, then we must infer that she deliberately gave nine different legacies to her relatives, and then subsequently gave to other persons the only property from which such legacies could be paid.

Such an inference would be contrary not only to natural reason and good sense, but also to all the authorities on the subject. We cannot impute to this testatrix a deliberate intention of making bequests which she knew could never be paid. (*McCorn* v. *McCorn*, 100 N. Y. 511.)

If, however, we determine the intention of the testatrix to have been that the legacies should be paid, and only the residue of the proceeds of the sale of the house, if any, should go to the heirs, then all is harmonious. Then the legacies are a charge upon the land, and the testatrix has given away by her will all the property she possessed.

The following cases are authorities in favor of such conclusions: *Hiscock* v. *Fulton* (43 N. Y. St. Repr. 738); *McCorn* v. *McCorn* (100 N. Y. 511); *Am. Bapt. Home Mission Society* v. *Foot* (52 Hun,

310); *Scott* v. *Stebbins* (91 N. Y. 605); *Hogan* v. *Kavanaugh* (138 id. 417).

It is claimed by the respondents, however, that it was necessary to show affirmatively by positive proof that the deficiency of personal property existed at the time of the execution of the will.

The will was made about a year before it was proven. The testatrix specified the stock which she had, her watch and chain and her house, and we think it a fair presumption that she knew what she had and specified all her property.

The presumption is in favor of a continuance of her condition as to property. The scheme of this will is obvious.

The testatrix was a woman with a small estate; she knew precisely what property she had, for she described it with accuracy in her will. She gave nine legacies to nine of her relatives, which amounted to $4,000. The legacies were doubtless graded by design so as to amount to that sum.

She then gave away all the personal property she had by specific legacies; she knew, therefore, that the general legacies could not be paid from her personal property. Then, in a clause of the will in which she gave her husband the interest on the legacies during his life, and the right to elect whether he would use the house for his residence, or consent to a sale of the same and take the use of the proceeds, she says the principal is to go to her heirs at his death.

Now, the respondents claim that the word " heirs," as here used, changes the scheme of the will in relation to the general legacies, and gives the fund of $4,000 to the heirs at law of the testatrix, and leaves the legacies unpaid.

If that conclusion was the necessary result of the use of the word " heir," we might be obliged to adopt it. But it is not; we have already seen that the word might have been used to designate the collateral relatives of the testatrix to whom she had bequeathed the legacies. That view is much more natural than the conclusion that she intended to give to others the only property she had undisposed of from which the legacies could be paid.

After all, we do not attach much importance to the use of the term heirs, as it is here employed. It may as well mean those who were interested in the estate by reason of the provisions of the will. (*Hoyt* v. *Hoyt*, 85 N. Y. 151.)

Where, as in this case, the legatees are relatives of the testatrix, the courts presume a desire that all parts of the estate shall be made liable for the payment of such legacies.

In this case no mention is made of any debts of the testatrix, and, therefore, the sole purpose of the power of sale must have been to enable the executors to pay the legacies which were payable after the death of the husband.

Inasmuch, therefore, as all the legatees in this case were blood relatives of the testatrix, whose legacies she must have intended to have paid; as she knew she had already disposed of all of her personal property, and the legacies could only be paid from the proceeds of the real estate; and as the power of sale was bestowed to enable the executors to pay the legacies, which were to remain unpaid until the death of her husband, we think the legacies were charged upon the real estate notwithstanding the absence of an expressed intention so to charge them. *Hoyt* v. *Hoyt* (*supra*) and *Kalbfleisch* v. *Kalbfleisch* (67 N. Y. 362) are authorities for the foregoing conclusions.

The decree should be reversed, with costs, payable from the fund, and the proceeds of the real property applied to the payment of the general legacies.

BROWN, P. J., and CULLEN, J., concurred.

Decree reversed so far as it directs the proceeds of the real estate to be paid to the heirs at law of the testatrix, and such proceeds are ordered to be applied to the payment of legacies, with costs to both parties payable out of the fund.