FANNY HENRIETTA YOUNGS, as Sole Surviving Executrix, etc., of THOMAS F. YOUNGS, Deceased, and Individually, and LAVINE G. MEYER, as Executrix, etc., of HENRIETTA GRAHAM YOUNGS, Deceased, Respondents, *v.* ADA C. YOUNGS, Individually and as Administratrix with the Will Annexed, etc., of GRAHAM YOUNGS, Deceased, and Others, Defendants, Impleaded with GRAHAM YOUNGS and JOSEPHINE GRAHAM YOUNGS, Appellants, and ALICE E. NASH and Others, Respondents.

*Charge upon land devised to a son of debts due from such son to the testator — effect of the refusal of the son to take under the devise in consequence of which a part interest in such lands passes by descent to his children.*

What language used in a will establishes an intention on the part of the testator to make debts due to him from one of his sons a charge upon lands devised to such son by the will, and, in the event of the refusal of the son to accept the devise and the consequent devolution of the title to such lands upon the heirs

at law of the testator, to make such debts a charge, not only upon the interests in the lands which passed to the children of such son, but also upon the interests in the lands which passed to all of the testator's heirs at law, considered.

APPEAL by the defendants, Graham Youngs and another, from a judgment of the Supreme Court, entered in the office of the clerk of the county of Queens on the 12th day of June, 1891, upon the report of a referee.

The record also contains a notice of appeal by the original plaintiffs, Henrietta Graham Youngs and Fanny Henrietta Youngs, as executrices, etc., of Thomas F. Youngs, deceased, and individually, from certain portions of the aforesaid judgment.

It appears by the statement in the case on appeal that Henrietta Graham Youngs, a life tenant and one of the plaintiffs, executrix of the last will and testament of Thomas F. Youngs, died, leaving Fanny Henrietta Youngs, the other plaintiff, as sole surviving executrix of Thomas F. Youngs, deceased.

*Abel Crook* [*Charles De Kay Townsend* and *Mortimer S. Brown* with him on the brief], for the appellants Graham Youngs and Josephine Graham Youngs.

*Latham G. Reed* [*B. Aymar Sands* and *John M. Bowers* with him on the brief], for plaintiffs, respondents, and for Alice E. Nash, respondent.

*Eliot Norton*, for Lavine G. Meyer [who was allowed to come in as respondent upon the appeal by stipulation of the parties].

PER CURIAM:

After careful consideration of this somewhat complicated and intricate case, we have reached the conclusion that the judgment (which was not brought before this court until more than thirteen years after its rendition) should be affirmed, for the reasons given by the learned and accomplished referee (now deceased) before whom the action was tried.* We think he was clearly right in finding as a matter of fact that Graham Youngs, Sr., did not accept the devise of the lands in controversy under his father's will. These lands having passed to the heirs at law of the testator, we also agree

---

* For opinion of referee see *post*, p. 446.

with the referee that all the shares are subject to the charges made in the devise to Graham Youngs, Sr.; and that those charges should not be restricted only to the shares which go to his children. It seems to have been the intention of the testator that the lands devised to his son Graham, to whomever they might go if he failed to accept the devise, should bear the burden of paying Graham's indebtedness to the testator's estate. It is not hostile to the intent of the testator to hold that *all* the lands are subject to the charges instead of only the shares which the children of Graham take as heirs at law. The testator intended that Graham should have all these lands after paying his debt, if he did pay it; in other words, he intended that Graham's debt should be paid out of the lands devised to him, and there is no injustice in carrying out this intention, no matter who acquires the lands in consequence of Graham's failure to accept the devise. If he had accepted the devise none of the heirs would have received any portion of these lands whatever.

The judgment should be affirmed.

HIRSCHBERG, P. J., BARTLETT, WOODWARD and JENKS, JJ., concurred.

Judgment affirmed, with costs.

The following is the opinion of GEORGE H. ADAMS, Esq., referee:

ADAMS, Referee:

At his death, March 3, 1883, Thomas F. Youngs left a will executed March 20, 1882, to which was added a codicil executed October 25, 1882. By the will he gave his wife a life estate in all his lands at Oyster Bay, where he resided, which are the particular lands claimed in this action to be charged with certain legacies and payments. He then made certain pecuniary legacies; to his wife, $25,000; to his daughter Fanny Henrietta, $50,000; to his daughter Lavine G. Meyer, $45,000; to his executors, in trust for his daughter Alice E. Nash, $25,000, with remainder over to her issue, or, in default thereof, to her sisters; to his executors, upon certain trusts for his daughter Gertrude, $50,000, with like remainder over; to his granddaughter, Josephine G. Youngs, daughter of his son Graham, $1,000. He then provides for the abatement of all these legacies *pro rata* if there should not be enough of personal estate to pay them after the payment of debts and funeral expenses,

and that any surplus of the personal estate, after payment of debts, etc., and the pecuniary legacies in full, is to be collected by his executors, including debts due to the testator from his sons Graham and Edward, and to be divided into four equal parts, one part to go to each of his daughters Lavine and Fanny Henrietta, and the other two parts to his executors under the trusts for his daughters Alice and Gertrude.

Besides the daughters above mentioned, the testator, at the time of making his will, had three sons, Alfred, Graham and Edward. The testator devised a certain part of his Oyster Bay lands to his executors in trust to apply the rents, etc., to the use of Alfred during his life, but this estate was subject to the life estate of his wife in the same lands and subject " to the charges herein made thereon," and there was a like trust, subject to the wife's life estate, as to one-third of a certain salt meadow. After Alfred's death, all of these lands were to go to the testator's sons Graham and Edward as tenants in common. To these sons Graham and Edward and their heirs were devised, subject to the wife's life estate, all the remainder of the lands at Oyster Bay as tenants in common, including the remaining two-thirds of the salt meadow.

By a residuary clause the testator devised all the remainder of the estate, real and personal, to his two sons, Graham and Edward, and his four daughters equally.

After the will, and before the codicil was made, Edward died unmarried and without issue. The codicil was then made revoking all devises to Edward and devising to the testator's son Graham and his heirs all the property devised by the will to, or intended for, Edward, subject to the provisions of said will in other respects, and subject to certain charges or conditions to be referred to.

The son Graham died after the death of the testator, leaving a will in favor of his son Graham, an infant; besides this son he left his widow, Ada C. Youngs, who is his administratrix with the will annexed, and an infant daughter, the Josephine mentioned in the will of Thomas Youngs, the testator first named.

Graham Youngs, son of Thomas Youngs, never accepted the devises to him or any of them, and the lands which, by the will of Thomas Youngs, were to go to him are either vested, subject to the life estates, in the heirs of Thomas Youngs (*Dill* v. *Wisner*, 88 N. Y.

153, 161), or have passed under the residuary clause as a lapsed devise; and the question is, are these lands charged by the will with certain legacies or payments now to be referred to? That they are so charged seems to be the intent of the testator as gathered from the whole will, and this intent must control. (*Hoyt* v. *Hoyt*, 85 N. Y. 142.)

The first clause in the will referring to such charges is a general clause, the 10th, which follows all the pecuniary devises in the will, and anticipates any mention of any lands or estates therein, except the widow's life estate, or any devises to his sons; this clause, standing as it does, prominently by itself, is very significant of the design maintained throughout by the testator, that his personal estate should be made good for the amounts advanced by him to these sons. He says:

"*Tenth.* I charge the shares of the lands herein devised *to* my sons Graham Youngs and Edward A. Youngs, respectively, with the payment to be made to my Executors of all debts that they respectively may owe to me at my decease and with all advances that I have made or shall make to them respectively; the same when collected to be deemed part of my personal estate and to pass accordingly."

Then in the 11th clause he proceeds at once as follows:

"*Eleventh.* After the death of my wife, I give, devise and bequeath to my sons, Graham Youngs and Edward A. Youngs, and their heirs, as tenants in common, subject to the same interest or estate in favor of my wife (and the charges herein made thereon) all and so much of my lands (except my salt meadow) * * *" describing a portion of his lands, about one-half.

By the 12th clause, "After the death of my wife I give * * * to the Executors of my Will in trust as hereinafter mentioned, but subject to the said estate or interest in behalf of my wife and to the charges herein made thereon," all the remainder or other one-half of the lands (except salt meadow), to receive the rents and apply them to the use of his son Alfred for his life, "and after his death the said lands and rights in this clause devised shall pass to my said sons Graham and Edward as tenants in common in fee."

By the 13th clause one-third of the salt meadow is given to the executors in trust for Alfred during his life, and then over to

Graham and Edward, and two-thirds to Graham and Edward, all subject to the wife's life estate; but this salt meadow is expressly excepted from the charges upon the main homestead property.

Then, in the 16th clause, the testator indicates generally what the charges are to which he has referred by anticipation in the preceding clauses, viz. :

"*Sixteenth.* Any sums of money that I have advanced or shall advance to either of my two sons Graham and Edward shall be a charge on any estate, real or personal, that may come from me to the son to whom the advance has been or shall be made."

And in the 19th clause he declares that he has advanced to Edward $7,500, and that he gives that to his wife, and adds, "and (I) do make the same a charge in her favor only on the share of lands devised by my said Will to said Edward A. Youngs."

So far the will.

The codicil is designed effectually to revoke all devises to Edward, who had recently died, and to devise to Graham all the property and rights to which Edward was entitled by will.  " * * * The said property and rights whether given to said son Graham by said Will or by this codicil to be possessed at the time prescribed in said Will as to devises to said Graham, and the title in him to vest on my death, said property and rights to be subject to the payment by said Graham and his heirs and issue, of the principal sum of Thirty thousand dollars advanced by me lately to said Graham, and of the further sum of Seven thousand five hundred dollars advanced by me to my said son Edward A. in his lifetime, or due by him to me ; and to be subject to the payment also by said Graham and his heirs and issue of all debts that said Graham shall owe to me at my decease ;  * * *  and I do hereby charge all the property and rights that shall pass from me to my said son Graham or his issue at my decease, with the payment of all the advances and debts in this clause mentioned."   The 19th clause of the will is revoked by the codicil, which contains for the purpose in hand, equivalent provisions as to payment of the $7,500 to his wife surviving him.

Now, throughout all the will, whenever referring to these lands and the devises of them, not only in the clauses containing the devises, but by anticipation in other clauses and by reference in all

subsequent clauses, the testator uses expressions which have been repeatedly held to manifest an intention to charge the lands devised; and while, as is said by the Court of Appeals recently (*Matter of City of Rochester*, 110 N. Y. 167), one should be careful "not to construct an intention from words which have acquired from constant use merely a formal or customary character," which "for that reason have ceased to have great import as expressions of the will-maker," still these words in this will are of so unequivocal a character as to be of great force. The will says, "I charge the shares of the lands herein devised to my sons" (10th clause). "I give, devise and bequeath" to them the lands "subject to * * * the charges herein made thereon" (11th clause). In the devise of the one-half to his executors for the life of Alfred, it says (12th clause), "I give and devise * * * (said lands) subject to * * * the charges herein made thereon," and after Alfred's death over to Graham and Edward. "Any sums of money that I have advanced or shall advance to (Graham and Edward) shall be a charge on any estate * * * that may come from me to the son to whom the advance has been or shall be made" (16th clause); and in the last (19th) clause he says: "I * * * do make the same (the $7,500 due from Edward) a charge * * * on the share of lands devised" to Edward.

Then in the codicil the testator declares that "the said property and rights" devised to Graham, whether by the will or the codicil, are "to be subject to the payment also by said Graham" (of the amounts in question), "and I do hereby charge all the property and rights that shall pass from me to my said son Graham or his issue at my decease, with the payment of all the" sums aforesaid.

Besides the repeated use of these expressions, as well understood in their general effect by laymen as by lawyers, there are some provisions of the will which lend support to the view I take of the testator's intention. As to the $7,500 in particular, due from Edward Youngs, there is a bequest of this as a legacy, as a specific legacy it may be (*Davis* v. *Crandall*, 101 N. Y. 311), to the wife; and coupled with this legacy in the same clause is the direction that it be a charge upon "the share of lands devised" to Edward; the specific legacy of the debt, the chose in action, is made to her, and, as it seems to me, the clear intention is expressed that she should have

the money out of it at all events, whether through payment by Edward (or Graham under the codicil) or by resort to the lands. Again, as to the sums declared to be due from Graham, it is directed that they be collected by the executors; that they shall then form part of the personal estate, so far only, however, as to be by them divided among the four daughters; by the particular provisions made in the 9th clause of the will it may be said that definite pecuniary legacies are carved out of these particular advances or debts, legacies which are indefinite only in amount, and to pay which the court would go far towards implying a charge upon the lands generally of the testator, in preference to those entitled to take under the residuary clause, or to the heirs at law. The $7,500 due from Edward is claimed to be a specific legacy, a bequest of the particular thing — namely, this debt — and ordinarily, if the debtor were insolvent, the legacy would be worthless; but this does not affect the case when a testator expressly provides that the amount of the debt due him should be made good to the devisee of the debt out of the testator's other estate if the debtor should not pay.

The case is not free from difficulty or even from doubt. It is certainly not usual for one to make that a charge upon his estate, or a part of his estate, which is due to him or to his estate from another. A charge is usually of some debt or obligation due or flowing from the testator himself. To require the real estate to bear the burden of paying or guaranteeing to the personalty a simple debt due to the testator, is uncommon at least, but there is no rule which prevents such a provision being effectual, provided the testator clearly so intended.

But the defendants contend that the intention did not go so far as to bind the lands in any event and in whosesoever hands they might go, but that it was to bind only that estate in the lands which should go to Graham; and that inasmuch as no estate went to Graham, because of his failure or refusal to accept the devise, the lands are not charged, though Graham's estate therein would have been, had he accepted. There would be some force in this if it were not for the expressions used by the testator in the will. While the devise of the one-half of the lands to Graham and Edward is " subject to　*　*　*　the charges herein made thereon " (11th clause) and the devise of the life estate to Alfred and remainder

over to them is "subject to * * * the charges herein made thereon" (12th clause), in the 10th and 19th clauses the testator says, "I charge the shares of the lands," etc., and "I * * * do make the same a charge * * * on the share of lands," and there are like expressions in the codicil. It is refining too much to hold that the expressions "I charge the shares of the lands," "I * * * charge all the property and rights that shall pass," limit the intention to charge only on such estate as should actually pass, or in which the devisee should actually share, finally and beneficially. These expressions, so far surely as the will is concerned, were used because all the lands were devised to Graham and Edward in common, and each one's advances were to be charged on his respective but undivided part in those lands. The words "the shares of the lands herein devised" to Graham and Edward respectively are descriptive of the respective portions of the lands to be enjoyed by each, and not of the particular legal estate in those lands.

Finally, there can be no doubt, I think, that if Graham had taken the estate under the will and codicil there would not only have been a resort to his personal obligation to pay these amounts to the widow and executors, but the amounts would have been directly chargeable upon the lands as charges; but it is the will that charges the lands, and the additional sanction afforded by his acceptance of the devise is to make himself personally responsible for the payment of the amounts charged; his acceptance in itself would not make that a "charge" upon the lands which without his acceptance would not have been a charge at all.

It is urged that there is a discretion in the court to grant the relief prayed for or to deny it, and that this discretion would be well exercised against the plaintiff in this case, because a sale of the lands subject to the life estates would be fruitless. I do not understand that I have any such discretion, and I am referred to no case in which it is exercised. The case of *Hoyt* v. *Hoyt* (85 N. Y. 142) seems to hold that the legatee or other person entitled to collect a claim charged upon the land is entitled as of right to a sale of the lands charged. But if there be a discretion, the argument loses much of its force from the fact, which has been lost sight of, that Alfred Youngs' life estate seems to be subject to the amounts charged upon the lands, which is the same as saying that the lands,

'if sold not to pay these charges, are sold free and clear of, and cut off, Alfred Youngs' estate.

But if there be a doubt upon that, and if it be true that a sale of these lands now subject to the life estate of the widow and of Alfred, would produce nothing and would sacrifice the interests of the heirs at law, or of the residuary devisees if the fee be in them, the sale may be made by the plaintiffs if they choose under the power of sale contained in the will, and if so sold by the executors with the concurrence of the widow, the lands would be free from all charges and from any life estate in any one ; and as the proceeds of such a sale are to stand precisely in the situation of the lands, the amounts charged on the lands would remain charges on these proceeds. Whether the executors and the widow, the latter of whom is plaintiff here in a representative and also in an individual capacity, can be required to sell under the power as a condition of granting relief in this action, has not been suggested, but that question can be brought up upon a settlement of the findings or decree.

The following is the memorandum of referee on presentation of findings :

ADAMS, Referee :

Upon reconsideration at the time of presenting findings, I have come to the conclusion that it was not the intent of the testator to make the life estate of Alfred Youngs subject to the charges which are found to be laid upon the lands generally. In strictness, the testator seems to say in the 12th clause that the estate in the trustees for Alfred's life is subject to the charges, but what he evidently had in his mind throughout the will was that the lands, as they came to Graham and Edward, should be subject to the charges, and this is presumably what he intended to accomplish when in the beginning of this clause he devised the southerly part of his lands to trustees, subject to the charges, with the remainder over at the end of the clause to Graham and Edward. Every presumption is against an interpretation which would incumber Alfred's life estate with debts due from or with advances made to Graham and Edward. The strict meaning of words must give way in this will to a plainly manifested intent of the testator, as, for example, in this very 12th clause, the devise to the executors in trust is, "After the death of

my wife, I give and devise," etc., and yet the devise itself is "sub-ject to the said estate or interest in behalf of my wife," which estate or interest at the death of the wife is clearly extinct, and the succeeding estate cannot be subject to it; the same confusing expressions are used in the 11th clause, where lands are devised to Graham and Edward, and again in the 13th clause of the will.

Respecting the suggestion made that a sale may be made under the power to the executors, the will provides that sales are to be made as the executors may deem expedient during the life of the widow (codicil), but only with her concurrence. I know of no authority which would sustain a positive direction in the decree requiring the executors to sell under this power, the testator having clothed them with a discretion to sell or not, as they might deem expedient; moreover, their discretion even is controlled by the provision that a sale can be made only with the concurrence of the widow; this is entirely personal to the widow, and if the widow, in her capacity of executor, could be compelled to exercise the power, in her individual capacity she could not be compelled to concur.

If, however, the executors now elect to sell, and agree that the decree in this action shall direct the sale to be made pursuant to the power, and if the widow will in a proper way express her concurrence in such a sale, there can be no doubt that it would be most advantageous to all concerned; and, as the proceeds of the sale follow the disposition of the lands, excepting the amounts of the legacy and other charges, which go to the direct benefit of the widow and the executors, the parties promoting this action, there would seem to be strong inducement to them to agree to such a sale.